Terry L. SEAMANS *v.* Pamela L. SEAMANS

CA 00-491 37 S.W.3d 693

Court of Appeals of Arkansas
Division II
Opinion delivered February 28, 2001

*Gibson & Hasem, P.L.C.,* by: *C.C. Gibson, III,* for appellant.

No response.

ANDREE LAYTON ROAF, Judge. Terry L. Seamans appeals the portion of an order of the Drew County Chancery Court awarding attorney fees pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to Terry's ex-wife, Pamela L. Seamans. On appeal, Terry argues that the chancellor erred in awarding fees without express statutory authorization and in setting the amount at $2,517 because it was "grossly excessive and unjust." We reverse and remand for further proceedings not inconsistent with this opinion.

In 1994, Terry and Pamela were divorced in Louisiana. The divorce was uncontested, and the parties agreed to joint custody of their minor daughter, Victoria. Under the joint custody plan that was appended to the decree, Pamela had physical custody of Victoria during the week, and Terry had physical custody on the weekends. The agreement also recited that "the parties may agree to additional visitation times, but said modification, if meant to be permanent in nature, shall be reduced to writing by the parties and recorded with the Court."

Shortly after the divorce, Terry and Pamela moved back to Arkansas, where they had grown up and both of their extended

families resided. Pamela entered college at the University of Central Arkansas and Victoria started school in Conway, where she completed kindergarten and first grade. In 1998, however, the parties verbally agreed that Victoria could attend school in Monticello, where Terry resided with his new wife. The school year went well, but Pamela decided that she would have Victoria attend school in Conway the next school year.

Terry discovered Pamela's plan and filed for emergency and permanent custody of Victoria in the Drew County Chancery Court at 8:00 a.m. on August 10, 1999. By 10:00 a.m. on the same date, the Drew County Chancery Court entered its Emergency Custody Order giving custody of Victoria to Terry. Terry, however, failed to register the Louisiana decree. On the same day, Pamela filed for custody in the Faulkner County Chancery Court, and she obtained her own emergency custody order for Victoria two days later. Pamela did register the Louisiana decree in Faulkner County Chancery Court. Pamela subsequently filed a motion to vacate the emergency custody order of the Drew County Chancery Court and also sought dismissal of the Drew County action. The Drew County Chancery Court set the matter for expedited hearing on August 19, 1999.

At the hearing, both Terry and Pamela testified about their agreement to allow Victoria to attend second grade in Monticello. Pamela stated that she understood the terms of the Louisiana decree to require any agreement to be reduced to writing if they intended to make it permanent, and because their agreement to have Victoria spend the 1998-1999 school year in Monticello was not in writing, it allowed her to revert back to the original visitation schedule when she decided that it would be in Victoria's best interest to return to school in Conway. Pamela admitted that she did not inform Terry about her plans and that Terry was upset when he discovered her intentions. Pamela claimed that she wanted to avoid a confrontation over the issue, but admitted that she did bring police to Terry's house in an effort to find Victoria and take her back. Terry confirmed that Pamela had not informed him of her intention to re-enroll Victoria in the Conway school system and that he was upset when he found out. He also stated that he believed that if Pamela picked up Victoria, she would not bring her back to attend school in Monticello.

At the close of the hearing, the chancellor found that Terry had "improperly retained the child after a visit or other temporary

relinquishment of physical custody" and declined to exercise jurisdiction over the custody dispute. He also found that jurisdiction should be vested in the Chancery Court of Faulkner County. The chancellor ultimately assessed $2,517 in attorney fees and costs against Terry, specifically reciting the UCCJEA as authority.

Terry first argues that the chancellor's award of fees and costs violated the general rule in Arkansas that, absent explicit statutory authority, each party must bear their own costs and fees. He contends that while attorney fees can be awarded pursuant to the UCCJEA, that legislation only relates to disputes between Arkansas courts and those of foreign jurisdictions, not disputes involving the courts of different counties within Arkansas, which is the situation in the instant case.

 This court reviews a chancellor's application of substantive law under the clearly erroneous standard of review. *See Gray v. Gray*, 69 Ark. App. 277, 12 S.W.3d 648 (2000). In part, the UCCJEA governs the modification of child custody determinations made in foreign jurisdictions and registered in Arkansas. *See* Ark. Code Ann. § 9-19-305 (Supp. 1999). It also guides the determination by a court of whether or not it should assume jurisdiction over a petition to modify an existing child-custody determination made by a foreign jurisdiction. Relevant to the instant case, the UCCJEA states in pertinent part:

> (a) Except as otherwise provided in § 9-19-204 or by other law of this state, if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
>
> (1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
>
> (2) a court of the state otherwise having jurisdiction under §§ 9-19-201 - 9-19-203 determines that this state is a more appropriate forum under § 9-19-207; or
>
> (3) no court of any other state would have jurisdiction under the criteria specified in §§ 9-19-201 — 9-19-203.
>
> (b) If a court of this state declines to exercise its jurisdiction pursuant to subsection (a) of this section, it may fashion an appropriate remedy to ensure the safety of the child and prevent a

repetition of the unjustifiable conduct, including staying the proceeding until a child-custody proceeding is commenced in a court having jurisdiction under §§ 9-19-201 - 9-19-203.

(c) If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subsection (a) of this section, it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate. The court may not assess fees, costs, or expenses against this state unless authorized by law other than this chapter.

Ark. Code Ann. § 9-19-208 (Supp. 1999).

 The UCCJEA was enacted to replace the former chapter entitled the Uniform Child Custody Jurisdiction Act (UCCJA), which dated back to 1979. The preamble of the latter states in pertinent part, "The general purposes of the subchapter are to . . . avoid jurisdictional competition and conflicts with courts of other states in the matter of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." Ark. Code Ann. § 9-13-201 (repealed 1999). *See also LeGuin v. Caswell,* 277 Ark. 20, 638 S.W.2d 674 (1982). This court has said that the UCCJA and the federal Parental Kidnaping Prevention Act (PKPA), found at 28 U.S.C. § 1738A (1981), govern state conflicts over child custody jurisdiction. *Gray v. Gray, supra.* The UCCJEA has revised the UCCJA in part to incorporate the home state preference of the PKPA and also to clarify the rules for original, modification, and enforcement jurisdiction. *See McCulley v. Bone,* 979 P.2d 779 (Or. App. 1999).

 We can find no language within the UCCJEA statutory scheme that broadens its application to purely intrastate custody disputes or evidences such legislative intent. Consequently, we find that because the UCCJEA has no application to intrastate custody disputes, the chancellor lacked the authority to award Pamela attorney fees pursuant to this statute.

 █ However, our courts have recognized the inherent power of a chancellor to award attorney fees in domestic relations proceedings. *See Schwarz v. Moody,* 55 Ark. App. 6, 928 S.W.2d 800 (1996); *Tortorich v. Tortorich,* 50 Ark. App. 114, 902 S.W.2d 247

(1995). The award of attorney fees is within the sound discretion of the chancellor in a child custody case even though an aftermath of a divorce. *Moore v. Smith*, 255 Ark. 249, 499 S.W.2d 634 (1973); *Hydrick v. Hydrick*, 224 Ark. 712, 275 S.W.2d 878 (1955). Although the chancellor in this instance lacked the authority to award attorney fees pursuant to the UCCJEA, which provides that where a person has engaged in unjustifiable conduct, the chancellor "*shall* assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney's fees," it was clearly within his discretion to do so. In this instance, because the chancellor was erroneously proceeding under a section that made an award of fees mandatory and not discretionary, we reverse the award of attorney fees and remand to the chancellor to exercise his discretion on this issue. *See Hall v. Staha*, 314 Ark. 71, 858 S.W.2d 672 (1993); *Tortorich v. Tortorich, supra*. Accordingly, we do not reach Terry's second point that the fee award was not "just and reasonable," because our remand to review the fee petition presupposes a consideration of the equities involved in making a discretionary award of attorney fees. *See Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000).

Reversed and remanded.

PITTMAN and BAKER, JJ., agree.