Elenita R. GREENHOUGH *v.* Ronald R. GOFORTH

03-93                                                  126 S.W.3d 345

Supreme Court of Arkansas
Opinion delivered October 23, 2003

*Stanley V. Bond*, for appellant.

*Herbert C. Southern*, for appellee.

R AY THORNTON, Justice. This appeal arises from the Washington County Circuit Court's dismissal of a petition brought by appellant, Elenita Greenhough Duckett, against appellee, Ronald R. Goforth, to determine the paternity of her child, H.J., and to establish child support. The trial court dismissed appellant's petition for lack of jurisdiction on the grounds that the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"), codified at Ark. Code Ann. § 9-19-101 *et seq.* (Repl. 2002), applied and that Arkansas was not the home state of H.J. We agree and affirm.

Appellant, who was born in the Philippines and later became an Australian citizen, and appellee, an American citizen residing in Fayetteville, began corresponding with one another in 1993. In May 1994, appellant and appellee met in Cebu, Philippines, where

they became intimately acquainted and began a sexual relationship. During that time, appellant was married to Frank Raymond Greenhough, an Australian citizen, and appellee was also married. Appellant and appellee never married each other.

In June 1994, appellant learned that she was pregnant, informed appellee of her pregnancy, and requested his assistance. On February 1, 1995, appellant gave birth to H.J. in the Philippines. In 1997, appellant and her husband, Frank Greenhough, together with H.J. moved from the Philippines to Australia.

On October 14, 1999, Frank Greenhough filed a Form 7 Application in the Family Court of Western Australia, seeking an order providing: (1) that H.J. reside with appellant and that appellant be responsible for day-to-day care; (2) that appellant and Greenhough retain joint responsibility for H.J.'s long-term care; (3) that Greenhough have reasonable access, or visitation, with the child; (4) mutual non-denigration orders; (5) that an injunction be entered, restraining appellant and Greenhough from removing H.J. from the State of Western Australia without the prior written consent of the other.

On November 22, 1999, appellant filed a Form 7A and 8A in response to Greenhough's Form 7 application. She averred that Frank Greenhough was not the biological father of H.J., but that he signed H.J.'s birth certificate.

On December 1, 1999, the matter came before the Australian family court. The court granted appellant sole responsibility for the day-to-day care of H.J., joint responsibility for the long-term care of H.J., ordered visitation for Frank Greenhough for the following year, enjoined the parties from denigrating each other in the child's presence, and enjoined the parties from removing H.J. from the State of Western Australia without the prior written consent of the other. On January 27, 2000, the family court ordered that Greenhough have supervised visitation with H.J. on specific dates.

On February 1, 2000, appellant filed an application for dissolution of marriage, or divorce, from Frank Greenough in Family Court of Western Australia. H.J. was included on the application as a child of the marriage, but on March 30, 2000, appellant submitted an affidavit in which she stated that appellee was "the biological father of my daughter."

On March 27, 2000, a divorce decree called a Decree Nisi of Dissolution of Marriage was entered by the Family Court of Western Australia at Perth. The Australian decree provided:

> The Court by order declared that it was satisfied that the child/ren named in the order is/are the only child/ren of the marriage who has/have not attained the age of eighteen years and that proper arrangements in all the circumstances have been made for the care, welfare and development of the child/ren.

On June 8, 2000, the family court granted the removal of H.J. from Australia to the United States from June 14, 2000 to July 12, 2000. Appellant and H.J. left Australia on June 4, 2001, and Frank Greenhough learned that appellant and H.J. were planning on staying in the United States for an extended period of time. While in the United States, appellant remarried a man named Tom Duckett with whom she and H.J. now reside in Hodges, South Carolina.

On December 14, 2001, appellant filed a petition with the Washington County Circuit Court to determine paternity of H.J. and to award child support. In her petition, appellant named appellee as the father of H.J., but Frank Greenhough was not made a party to or notified of the Arkansas proceedings. Because appellant and H.J. reside in South Carolina, appellee moved to dismiss the petition, alleging that Arkansas was not the child's "home state" under Ark. Code Ann. § 9-19-201 (Repl. 2002), and that the trial court lacked jurisdiction.

The trial court held a hearing on appellant's motion for paternity testing and appellee's motion to dismiss on June 6, 2002. At the hearing, appellee testified that he had sexual relations with appellant, but did not believe he was the biological father of H.J. because he had a vasectomy in 1987 or 1988 without his wife's knowledge. Appellee's daughter filed an affidavit in which she stated that neither she nor her mother had knowledge of her father's vasectomy. The court reserved ruling on the issue because it required the parties to retrieve the Australian court file.

The Australian court file was retrieved, and on August 26, 2002, a telephone conference was held between the trial court, the attorney for appellant, and the attorney for appellee. During the telephone conference, the trial court advised counsel that it was inclined to grant the motion to dismiss, but asked appellant's

attorney if his client would like a formal hearing to present evidence. Appellant's attorney requested the formal hearing.

On August 27, 2002, Frank Greenhough filed an application in accordance with the Hague Convention on the civil aspects of international child abduction for the return of H.J. abducted from Australia. In the attachment to the application, Frank Greenhough stated that H.J. was taken out of Australia against the orders of the family court, and that he did not consent to the child remaining in the United States. Greenhough further stated that he has maintained contact via telephone with H.J. and has sent gifts to the child.

On August 29, 2002, appellee brought it to the trial court's attention that Frank Greenhough filed an application for enforcement of the Australian visitation orders, pursuant to the Hague Convention.

On October 9, 2002, the Washington County Circuit Court held a hearing on the matter. At the hearing, appellant testified that she and H.J. left Australia on June 4, 2001. She further testified that she did not seek an Australian court order to take H.J. out of Australia at that time because, in her opinion, there were no existing orders, and the application for access had been discontinued.

The trial court granted appellee's motion to dismiss based upon a finding that Arkansas was not the child's home state under the UCCJEA. We agree with appellee's first contention that the trial court properly dismissed the case because it did not have jurisdiciton to hear the case. Because the court lacked jurisdiction, we need not consider whether the motion to dismiss should alternatively have been granted for other reasons, specifically whether the Australian divorce decree acts as *res judicata* on the issue of paternity or whether a ruling by the trial court would violate the terms of the Hague Convention. Appellant brings the present appeal from the trial court's grant of appellee's motion to dismiss.

For her first point on appeal, appellant argues that the trial court erred in granting appellee's motion to dismiss by finding that the UCCJEA, codified at Ark. Code Ann. § 9-19-101 *et seq.*, applies to paternity actions. Specifically, appellant argues that the trial court misinterpreted the language of the UCCJEA, as codified by our statutes, and that the paternity statutes should apply.

In her petition to establish paternity and to award child support, appellant averred "[t]hat the petitioner is the proper person to have custody of the minor child, subject to reasonable visitation of the [appellee] who is the natural father."

The trial court ordered:

> [T]he UCCJEA applies to actions for both paternity and custody from the inception of the case. Arkansas is not the home state of the child, [H.J.] This court does not, therefore, have jurisdiction to hear this case.

In addressing appellant's first point on appeal, we must examine the UCCJEA in conjunction with our paternity statutes found at Ark. Code Ann. § 9-10-101 *et seq.* (Repl. 2002). Because the issue now facing this court is one of statutory interpretation, it should be noted that our review is *de novo,* as it is for this court to decide what a statute means. *South Cent. Arkansas Elec. Co-op. v. Buck,* 354 Ark. 11, 117 S.W.3d 591 (Sept. 11, 2003).

In 1997, the UCCJEA revised the Uniform Child Custody Jurisdiction Act ("UCCJA"), which was promulgated in 1968. The preamble of the former UCCJA states in pertinent part, "The general purposes of the subchapter are to . . . avoid jurisdictional competition and conflicts with courts of other states in the matter of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." Ark. Code Ann. § 9-13-201 (repealed 1999). *See also LeGuin v. Caswell,* 277 Ark. 20, 638 S.W.2d 674 (1982).

The UCCJEA is the exclusive method for determining the proper forum in child-custody proceedings involving other jurisdictions. *See* Ark. Code Ann. §§ 9-19-101 to 9-19-401 (Repl. 2002). We provided an overview of the UCCJEA in *Arkansas Dept. of Human Services v. Cox,* 349 Ark. 205, 211-212, 82 S.W.3d 806, 811 (2002), where we stated:

> The UCCJEA as codified in Arkansas is comprised of three subchapters. Subchapter one provides general provisions, including definitions. Subchapter two sets out jurisdiction and the method whereby the courts of this state issue a child-custody determination order. Section 9-19-201 provides the criteria used to determine whether a state has jurisdiction to make an "initial child-custody determination." "Initial determination" means the first child-

custody determination. Ark. Code Ann. § 9-19-102(8) (Repl.2002). *Under § 9-19-201(a) as applied to the facts of this case, a court of this state has jurisdiction to make an initial child-custody determination if it is the home state of the child.* The home state of a child of less than six months of age means the state in which the child lived from birth with a parent or person acting as a parent. Ark. Code Ann. § 9-19-102(7).

*Cox, supra* (emphasis added).

Arkansas Code Annotated § 9-19-102, which is contained in subchapter one of the UCCJA, includes the definition of a child-custody proceeding. It provides in pertinent part:

> (4) "Child-custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, *paternity*, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under subchapter 3 of this chapter.

*Id.* (emphasis added).

Under the plain language of Ark. Code Ann. § 9-19-102(4), the UCCJEA provides that child-custody proceedings include paternity actions. We should note that appellant's petition also included that "the petitioner is the proper person to have custody of the minor child, subject to reasonable visitation of the respondent who is the natural father." Because appellant includes the issue of custody, the UCCJEA is certainly applicable to proceedings involving custody. Therefore, the trial court was correct in its application of the UCCJEA to the present action, which includes issues of paternity, child support, and custody.

We now turn to the trial court's ruling that Arkansas is not the home state of H.J. Under the UCCJEA, a home-state analysis is required. *See Finney v. Cook*, 351 Ark. 367, 94 S.W.3d 333 (2002). Arkansas Code Annotated § 9-19-102(7) provides:

> (7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive

months immediately before the commencement of a child-custody proceeding . . . [.]

*Id.*

Arkansas Code Annotated § 9-19-201, which is contained in subchapter two of the UCCJEA, grants Arkansas jurisdiction over initial child-custody proceedings if Arkansas is the home state of the child. The statute provides:

(a) Except as otherwise provided in § 9-19-204, a court of this state has jurisdiction to make an initial child-custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

(A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 9-19-207 or § 9-19-208; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

    (c)  Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Arkansas Code Annotated § 9-19-201.

■ Here, the trial court was correct in its ruling that Arkansas is not the home state of the child. First, the record is replete with evidence that H.J. now resides in South Carolina with appellant and her new husband. In her petition, appellant avers that she and H.J. are living in Greenwood County, South Carolina. Additionally, we cannot find any evidence in the record to indicate that H.J. has ever resided in Arkansas with either appellant or appellee. Second, under subsection (a)(2), we find no evidence in the record to reflect that any court has declined to exercise jurisdiction on the grounds that Arkansas is the more appropriate forum, or third, that any other American court has exercised jurisdiction on the matter. Additionally, we do not find anything in the record to reflect that appellant filed the action in her state of residence, or that the case has been to referred to Arkansas from another state.

We note that Ark. Code Ann. § 9-19-105 states that "a court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying subchapters 1 and 2 of this chapter." *Id.* Under a home-state analysis required by the UCCJEA, it appears that the home state with proper jurisdiction could be either South Carolina or Australia, but that question is not for this court to resolve.

■ Appellant argues that paternity statutes, found at Ark. Code Ann. § 9-10-101 *et seq.*, may apply in lieu of the UCCJEA. However, appellant's argument is misplaced. Because other jurisdictions, particularly South Carolina and Australia, have a potential interest in H.J., the UCCJEA applies.

■ Therefore, based upon our standard of review, we hold the trial court properly found that Arkansas is not the home state of H.J. and has no jurisdiction to hear the matter. Accordingly, we affirm the trial court's grant of appellee's motion to dismiss. Because we hold that the trial court was correct in dismissing the case for lack of jurisdiction, we will not address appellant's remaining points on appeal on the merits.

Affirmed.