Tiana Marie DOROTHY  *v.*  Patrick James DOROTHY

CA 04–32                                          199 S.W.3d 107

Court of Appeals of Arkansas
Opinion delivered December 1, 2004

*Brenda Austin Ltd.*, by: *Brenda Horn Austin*, for appellant.

No response.

SAM BIRD, Judge. By decree of the Crawford County Circuit Court on October 21, 2001, Patrick James Dorothy was granted a divorce from Tiana Marie Dorothy and was awarded custody of their two children. In this one-brief case, Ms. Dorothy appeals only the award of custody. She contends (1) that the trial court erred in taking jurisdiction because jurisdiction was not established pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, codified at Ark. Code Ann. § 9-19-101 *et seq.*, and the decree did not contain language conferring jurisdiction pursuant to the UCCJEA; (2) that the trial court abused its discretion when denying her motion to continue the case; (3) that the trial court clearly erred in awarding custody to appellee where the court made no finding about the children's welfare and best interests pursuant to section 9-13-101(a)(1)(A), and it was not in their best interests and welfare; and (4) that the trial court erred in sustaining Mr. Dorothy's objection to testimony that he failed to provide support for the minor children during the parties' separation. We affirm on all points.

## Jurisdiction

As her first point on appeal, Ms. Dorothy contends that the trial court erred in taking jurisdiction because jurisdiction was not established pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, codified at Ark. Code Ann. § 9-19-101 *et seq.*, and the decree did not contain language conferring jurisdiction pursuant to the UCCJEA. She asserts that Arkansas was not the home state of the children, and that Arkansas courts did not have subject-matter jurisdiction over the child-custody action.

Our supreme court has stated that under the UCCJA, the predecessor of the UCCJEA, child-custody jurisdiction is a matter of subject-matter jurisdiction. *Moore v. Richardson,* 332 Ark. 255, 964 S.W.2d 377 (1998). It has subsequently stated that the UCCJEA is the exclusive method for determining the proper forum in child-custody proceedings involving other jurisdictions. *Greenhough v. Goforth,* 354 Ark. 502, 126 S.W.3d 345 (2003).[1]

---

[1] The UCCJEA was enacted to replace the former chapter entitled the Uniform Child Custody Jurisdiction Act (UCCJA), which dated back to 1979. *Seamans v. Seamans,* 73 Ark. App. 27, 37 S.W.3d 693 (2001). The preamble of the latter states in pertinent part, "The

Courts from other jurisdictions have recognized that the threshold requirements under the UCCJA concern subject-matter jurisdiction, and that such jurisdiction can be raised at any time by the parties or *sua sponte* by a court of review and cannot be conferred by the parties. *Biscoe v. Biscoe*, 443 N.W.2d 221 (Minn Ct. App. 1989) (citing *Campbell v. Campbell*, 180 Ind. App. 351, 352, 388 N.E.2d 607, 608 (1979); *Smith v. Superior Court of San Mateo County*, 68 Cal. App. 3d 457, 461, 464 n.3, 137 Cal. Rptr. 348, 351, 353 n.3 (1977)). Subject-matter jurisdiction relates to the competence of a court to hear a matter, and custody determinations are status adjudications not dependent upon personal jurisdiction over the parents. *Consford v. Consford*, 271 A.D.2d 106, 711 N.Y.S.2d 199 (2000). A state may have jurisdiction to enter a dissolution decree, but such does not necessarily confer jurisdiction to make a child-custody determination. *Stevens v. Stevens*, 682 N.E.2d 1309 (Ind. Ct. App. 1997). Rather, jurisdiction over custody matters having an interstate dimension must be independently determined by application of that state's version of the Uniform Act: when a state has adopted a version of the Uniform Child Custody Jurisdictional Act, jurisdiction over the issue of custody is determined by application of the Uniform Act, even if jurisdiction over the dissolution action is undisputed. *Id.* The Act governs all custody cases, and it is not necessary to file a separate action under the Act to invoke its rules. *In the Marriage of Schoeffel*, 268 Ill. App.3d 839, 644 N.E.2d 827 (1994), (stating that a party's request for custody in New York action for divorce was sufficient to trigger application of the Act although the party did not mention the Act).

Our supreme court set forth this overview of the UCCJEA in *Arkansas Department of Human Services v. Cox*, 349 Ark. 205, 211-12, 82 S.W.3d 806, 811 (2002):

The UCCJEA as codified in Arkansas is comprised of three subchapters. Subchapter one provides general provisions, including

---

general purposes of the subchapter are to . . . avoid jurisdictional competition and conflicts with courts of other states in the matter of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." *Id.*; Ark. Code Ann. § 9-13-201 (repealed 1999). This court has said that the UCCJA and the federal Parental Kidnaping Prevention Act (PKPA), found at 28 U.S.C. § 1738A (1981), govern state conflicts over child custody jurisdiction. *Seamans, supra.* The UCCJEA has revised the UCCJA in part to incorporate the home state preference of the PKPA and also to clarify the rules for original, modification, and enforcement jurisdiction. *Id.*

definitions. Subchapter two sets out jurisdiction and the method whereby the courts of this state issue a child-custody determination order. Section 9-19-201 provides the criteria used to determine whether a state has jurisdiction to make an "initial child-custody determination." "Initial determination" means the first child-custody determination. Ark. Code Ann. § 9-19-102(8) (Repl.2002). Under § 9-19-201(a) as applied to the facts of this case, a court of this state has jurisdiction to make an initial child-custody determination if it is the home state of the child.

At issue in the point of appeal we now consider is jurisdiction of the trial court and the criteria used to determine whether Arkansas had jurisdiction to make the determination of child custody. Section 9-19-201(a) (Repl. 2002) guides our decision:[2]

(a) Except as otherwise provided in § 9-19-204 [temporary emergency jurisdiction], a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) this State is the home State of the child on the date of the commencement of the proceeding, or was the home State of the child within six (6) months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another State does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home State of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

(A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

---

[2] This section provides mandatory jurisdictional rules for the original child custody proceeding. It generally continues the provisions of the UCCJA § 3. However, there have been a number of changes to the jurisdictional bases.

*1. Home State Jurisdiction.* The jurisdiction of the home State has been prioritized over other jurisdictional bases.

Ark. Code Ann. § 9-19-201, UNIFORM LAW COMMENTS (Repl. 2002).

(B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under § 9-19-207 or § 9-19-208; or

(4) no court of any other State would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Additionally, section 9-19-102 sets forth definitions that are pertinent to the issues we now consider:

(3) "Child-custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

(4) "Child-custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under subchapter 3 of this chapter.

. . . .

(7) "Home state" means the State in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive

months immediately before the commencement of a child–custody proceeding. In the case of a child less than six (6) months of age, the term means the State in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

(8) "Initial determination" means the first child–custody determination concerning a particular child.

We now consider whether the trial court in the present case erred in taking jurisdiction over the matter of child custody. Ms. Dorothy states in her brief that the children were picked up in Iowa by appellee or his mother in May or June of 2003 for what was supposed to be summer visitation. The record reveals that at the trial of this matter on October 14, 2003, the trial court solicited further information about where Ms. Dorothy and the children had lived:

THE COURT: Who else lives with you in this house you have now?

DEFENDANT, Ms. DOROTHY: My boyfriend.

THE COURT: Is it your house or his house?

DEFENDANT, Ms. DOROTHY: It's both of ours.

THE COURT: What, are you renting it?

DEFENDANT, Ms. DOROTHY: Yes.

THE COURT: And it's in Iowa?

DEFENDANT, Ms. DOROTHY: Yes.

THE COURT: How long have you lived in Iowa?

DEFENDANT, Ms. DOROTHY: I've lived there since the beginning of February.

THE COURT: Six or seven months maybe?

DEFENDANT, Ms. DOROTHY: Correct.

THE COURT: Where did you live before that?

DEFENDANT, Ms. DOROTHY: In Arizona.

THE COURT: How long did you live in Arizona?

DEFENDANT, Ms. DOROTHY: Two and a half years.

THE COURT: Where did you live before that?

DEFENDANT, Ms. DOROTHY: Arkansas.

THE COURT: How long did you live in Arkansas?

DEFENDANT, Ms. DOROTHY: Six months, I believe.

THE COURT: When were you in Colorado then?

DEFENDANT, Ms. DOROTHY: There was a period for a month that I went to stay with my dad because he wanted to see the children and I thought it would be better, however it wasn't.

Clearly, the trial court's questions of Ms. Dorothy elicited the evidence that was necessary to a determination of the court's jurisdiction over the matter of child custody. Ms. Dorothy's answers revealed that the children had lived in Iowa only from some time in February 2003 until the end of the school year in May or June, and thus had not lived in any state for six consecutive months immediately before appellee filed his complaint for divorce and custody on July 18, 2003, at which time the child-custody proceeding commenced. Thus, the children had no home state under the UCCJEA when the proceeding was commenced, and Arkansas had jurisdiction over child custody by the default provision of Arkansas Code Annotated section 9-19-201(a)(4) (Repl. 2002).

The decree of divorce issued by the trial court sets forth the court's finding that it had "jurisdiction of the parties and subject matter of this cause." Ms. Dorothy argues, however, that the trial court was required to make a specific finding of subject-matter jurisdiction, but she cites no authority for this proposition and does not make a convincing argument. An issue will not be addressed

on appeal where there is no citation to authority or convincing argument. *Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002). We hold that the trial court properly assumed jurisdiction to determine child-custody in this case.

## Continuance

■ As her second point on appeal, Ms. Dorothy contends that the trial court abused its discretion when denying her motion to continue the case. On September 11, 2003, after she had answered appellee's complaint for divorce and request for a hearing, the trial court set trial for October 14, 2003. On October 7, 2003, Ms. Dorothy requested a month's continuance in order to obtain funds for a retainer and to find an attorney. The trial court denied her request, pointing out that the case was filed in July, that she was served in August, and that she filed her pro se answer on September 8, 2003. Ruling that was ample time to have obtained an attorney, the court denied Ms. Dorothy's request but stated that it would consider a continuance in the event that she should obtain counsel and should counsel request time to prepare.

■ The court may, upon motion and for good cause shown, continue any case previously set for trial. Ark. R. Civ. P. 40(b). The granting or denial of the motion for continuance is a matter within the discretion of the trial court. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001). Here, we hold that the trial court did not abuse its discretion in denying appellant's motion for continuance.

## Welfare and Best Interest of the Children

· Ms. Dorothy contends that the trial court clearly erred in awarding custody to appellee where the court failed to make a finding of what the welfare and best interests of the children were pursuant to section 9-13-101(a)(1)(A), and it was not in the best interests and welfare of the children. Arkansas Code Annotated section 9-13-101(a)(1)(A) (Repl. 2002) states that in an action for divorce, the award of custody of a child of the marriage shall be made . . . solely in accordance with the welfare and best interest of the child.

Ms. Dorothy argues that Mr. Dorothy had an unstable past, and that she did not; that she was the children's primary caretaker; that she had no drug or alcohol problems; and that she moved in

order to secure a better home and job. Mr. Dorothy testified, however, that when the children were living with their mother, they were in several schools during the year, living with several different men, one of whom appellant met on the internet before moving to Arizona. He said that the children were currently enrolled in school in Crawford County where his parents resided, and that the children attended church. He stated that the parties had been separated since January 2000; that they had no understanding or visitation agreement; and that the children were with him for various time periods over the last three and a half years, beginning with a six-month period and including when she asked him to take the children at summertime and when she was getting ready to move in with another man. Mr. Dorothy said that he contacted the children every time he got the chance, when Ms. Dorothy called and he knew where she was. He said that he had driven all the way to Arizona, Colorado, and Iowa, to pick up the children, and that Ms. Dorothy did not meet him halfway. He said that he would marry his girlfriend with whom he and the children were living if it were to be in the best interest of the children.

Ms. Dorothy testified that she played sports and did homework with the children, and had been their primary care giver since birth. She said that she tried to have Mr. Dorothy served with divorce papers from Arizona, but that he falsified his address and the papers were not delivered correctly. She said that she had lived in Arizona for a total of two and a half years, leaving there once for a month; then she stayed in Colorado for a little while; and currently was in Iowa. She said that the children had been in two schools in Arizona because they moved into a new house, and they went to one school in Iowa and one in Colorado. She said that she currently lived with her boyfriend in a four-bedroom home across from a school.

In our de novo review, all issues of law or fact raised in a custody proceeding are before this court for our determination. *Pierce v. Pierce*, 73 Ark. App. 339, 43 S.W.3d 192 (2001). Here, the trial court stated from the bench that the children needed to be kept in a wholesome environment, and that the court was not impressed with either of the parties living with people they were not married to. The court gave appellee a week to either marry his girlfriend or have her move out. It is clear to us that the trial court determined that the best interests and welfare of the children would be served by a wholesome environment, and that such an

environment would exist with Mr. Dorothy. We hold that the trial court did not clearly err in awarding custody to him.

## Excluded Testimony

Ms. Dorothy contends that the trial court erred in sustaining Mr. Dorothy's objection to testimony that he failed to provide support for the minor children during the parties' separation. The ruling was made at trial when Ms. Dorothy, who appeared pro se, asked Mr. Dorothy to testify as to how much support he had given her in the last three-and-a-half years. His counsel objected, "The parties were married. The testimony had been that she led a transient lifestyle moving from place to place, and she's asking questions that were not covered on direct." The court sustained the objection, ruling that the issue of support was not relevant to the time that the parties were separated because Ms. Dorothy had not requested support from Mr. Dorothy, nor had an order for support been entered.

Ms. Dorothy challenges the trial court's ruling that the excluded testimony was not relevant. She cites *Wilson v. Wilson*, 67 Ark. App. 48, 991 S.W.2d 647 (1999), where the trial court considered it relevant to consider whether the father had failed to voluntarily support the children during the parents' separation in determining that the mother was the caretaker of the children and that the father had separated himself from their lives. Appellant cites no authority, however, nor presents any convincing argument that the trial court is required to consider such evidence as relevant in every case. Additionally, we note Mr. Dorothy's testimony that the children were in his physical custody for a significant portion of the time that the parties were separated. Under the evidence presented to the trial court, we hold that it did not err in excluding testimony regarding any lack of support by Mr. Dorothy during the times that the children were with Ms. Dorothy.

Affirmed.

ROBBINS and ROAF, JJ., agree.