Sheryl WEESNER  *v.*  John JOHNSON

CA 04-784                                    201 S.W.3d 432

Court of Appeals of Arkansas
Opinion delivered January 19, 2005

*Lynn Pence*, Center for Arkansas Legal Services, for appellant.

No response.

LARRY D. VAUGHT, Judge. Appellant Sheryl Weesner appeals the trial court's denial of her motion to dismiss and the subsequent entry of a divorce decree addressing issues of custody and visitation. In this one-brief case, she contends that the trial court erred in taking jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at Ark. Code Ann. §§ 9-19-101—9-19-401 (Repl. 2002 & Supp. 2003). We agree, and reverse.

On November 3, 2003, John Johnson, a resident of Arkansas, filed for divorce in White County Circuit Court. Johnson filed an amended complaint for divorce on December 23, 2003, asking that he be awarded custody of the minor child and that Weesner be required to pay support. Weesner filed a motion to dismiss and an amended motion to dismiss alleging that Arkansas did not have jurisdiction to determine issues regarding the minor child. As required by Ark. Code Ann. § 9-19-209 (Repl. 2002), Weesner attached an affidavit to the motion stating the addresses where the child had lived since her birth and that she was presently involved in an action for child support filed in California. In the affidavit, Weesner maintained that she and the minor child had moved around the state, but had always resided in California since the child's birth.

At a hearing on Weenser's motion to dismiss, Weesner's counsel maintained that California was the home state of the child and had jurisdiction. Johnson's counsel, however, argued that California was not the child's home state and that Arkansas could retain jurisdiction.

The trial court allowed Johnson to testify at the hearing, and he stated that he and Weesner had been separated since 2001, and although married when the child was born in California on

October 5, 2001, they were not living together at the time and did not live together after the baby was born. Johnson testified that Weesner had contacted him after the birth and told him on several occasions that she was moving from California. He stated that she moved around a lot, about every six months. The following facts were revealed on cross examination:

> DEFENDANT'S COUNSEL: How long did she live in California after that before Ms.Weesner called you and said, "we're moving."
>
> JOHNSON: Maybe six months.
>
> DEFENDANT'S COUNSEL: Okay. So from birth to six months they lived in California; is that correct?
>
> JOHNSON: Yeah, she did.
>
> DEFENDANT'S COUNSEL: And then where did they move after that?
>
> JOHNSON: They moved to Arizona.
>
> . . .
>
> DEFENDANT'S COUNSEL: How long did they live in Arizona?
>
> JOHNSON: I think she lived there three or four months.
>
> DEFENDANT'S COUNSEL: And where did they move after that?
>
> JOHNSON: After that, probably back to California.
>
> DEFENDANT'S COUNSEL: And how long did they live in California then?
>
> JOHNSON: I'm not sure.
>
> . . .
>
> DEFENDANT'S COUNSEL: And did they move again outside California?

JOHNSON: I don't think it was outside California. I think it was around, went to the Bay area somewhere.

DEFENDANT'S COUNSEL: So the first six months of life in California, moved to Arizona, around Wittmann, maybe three or four months, then they moved back to California, and they've lived in California ever since then; is that correct?

JOHNSON: I — I think they moved away again.

DEFENDANT'S COUNSEL: That was my question to you: Where to and when?

JOHNSON: I think it was Nevada.

DEFENDANT'S COUNSEL: When was that?

JOHNSON: Well, I'm not sure.

DEFENDANT'S COUNSEL: Do you know how long they lived in Nevada?

JOHNSON: Probably two or three months.

The trial court subsequently filed an order denying Weesner's motion to dismiss and stating it had jurisdiction over the parties and subject matter. The divorce decree was then issued on April 27, 2004, and simply stated that based on the testimony taken in open court it had jurisdiction over the parties and subject matter.

■■ Our supreme court set forth an overview of the UCCJEA in *Arkansas Department of Human Services v. Cox*, 349 Ark. 205, 82 S.W.3d 806 (2002), recognizing that the purpose of adopting the UCCJEA was to prevent jurisdictional conflicts like those that arose under its predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA). It also determined that child-custody jurisdiction is a matter of subject-matter jurisdiction. *Moore v. Richardson*, 332 Ark. 255, 964 S.W.2d 377 (1998); *see also Dorothy v. Dorothy*, 88 Ark. App. 358, 199 S.W.3d 107 (2004). It subsequently stated that the UCCJEA is the exclusive method for determining the proper forum in child-custody proceedings in-

volving other jurisdictions. *Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003). We can raise sua sponte the question of whether the lower court lacked subject-matter jurisdiction, and if we conclude that the lower court was without jurisdiction, dismissal is an appropriate disposition of the case. *Tyler v. Talburt*, 73 Ark. App. 260, 41 S.W.3d 431 (2001).

■ In applying the UCCJEA, section 9-19-201 provides the criteria to determine whether a state has jurisdiction to make an initial child-custody determination. It provides:

(a) Except as otherwise provided in § 9-19-204 [temporary emergency jurisdiction], a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) this State is the home State of the child on the date of the commencement of the proceeding, or was the home State of the child within six (6) months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another State does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home State of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

(A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under § 9-19-207 or § 9-19-208; or

(4) no court of any other State would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Ark. Code Ann. § 9-19-201. Additionally, § 9-19-102 defines "home state" as:

the State in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six (6) months of age, the term means the State in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

██ Under this definition, Arkansas was clearly not the home state of the child because no evidence was presented that the child ever lived in Arkansas. Therefore, Arkansas could not acquire jurisdiction under § 9-19-201(a)(1). Section 9-19-201(a)(2) would allow Arkansas jurisdiction if the child had no home state or the home state declined jurisdiction, but only if the child and at least one parent had a significant connection with Arkansas other than mere physical presence and substantial evidence existed in this state concerning the child's welfare and being. Because this is not a case where a home state has declined jurisdiction, under this provision, the court could only conclude it had jurisdiction if there was evidence that the child and at least one parent had significant connections with Arkansas. The facts as presented to the judge in this case show that the child had absolutely no connections with the state of Arkansas. The father lived here, but the child never did. In two cases decided under the previous UCCJA, such a "connection" was found to be lacking. *LeGuin v. Caswell*, 277 Ark. 20, 638 S.W.2d 674 (1982) (finding fact that father had moved to Arkansas and filed custody action, although children had never been to the state, not enough to establish significant connection with the state); *Fletcher v. Fletcher*, 20 Ark. App. 190, 726 S.W.2d 684 (1987)

(finding that the child was not significantly connected to the state when the extent of the child's connection with Arkansas was that his father claimed it as his permanent residence).

Section 9-19-201(a)(3) refers to a situation in which another state with jurisdiction declines to use it because it would be more convenient to allow the case to proceed in Arkansas. That is clearly not the case here. The final provision for finding jurisdiction is § 9-19-201(a)(4). In that provision, Arkansas can retain jurisdiction if no court of any other state would have jurisdiction under the previous three provisions. Although Johnson's testimony did not determine conclusively that the child had lived in California for the six months immediately preceding the custody proceedings (and therefore establish it as the child's home state), it did establish that California could meet the requirements of § 9-19-201(a)(2) because of the significant connections the child had with the state and the likelihood that substantial evidence existed there regarding the child's well-being, which would then prohibit Arkansas from retaining jurisdiction under § 9-19-201(a)(4). Johnson testified that the child was born in California, lived there with her mother for at least six months before moving to Arizona for, at the most, four months, then back to California for an unspecified amount of time, then to Nevada for, at the most, three months, then back to California until the present time. That testimony indicates the child was born in California, lived in California for over half of her life (except for two brief moves out of state), and lived in California at the time of the hearing. Therefore, based on Johnson's testimony and the affidavit of Weesner, the only state with which the child had "significant" connections is the State of California.[1] Because the child had no connection with the State of Arkansas and the only way Arkansas could exercise jurisdiction would be if the child had no home state or no significant connections with another state, we hold that the trial court erred as a matter of law in assuming jurisdiction over the child-custody determinations in this case.

Reversed and dismissed as to the child-custody adjudication.

GRIFFEN and CRABTREE, JJ., agree.

---

[1] Whether California is pursuing or decides to pursue its jurisdiction over the child-custody determination is, of course, for it to determine.