2011 Ark. App. 491

Jeryl B. GRANTHAM, Appellant

v.

Gail L. LUCAS, Appellee.

No. CA 11–72.

Court of Appeals of Arkansas.

Aug. 31, 2011.

Carrol Ann Hicks, North Little Rock, for appellant.

Guy R. Satterfield, Little Rock, for appellee.

RITA W. GRUBER, Judge.

Jeryl Grantham brings three points in this appeal from a divorce decree entered on September 27, 2010:(1) the circuit court erred by awarding primary physical custody of the parties' minor daughter to his ex-wife, Gail Lucas; (2) the circuit court erred in refusing to require division and distribution of $12,000 that Ms. Lucas received from a home-equity loan; and (3) the circuit court erred by making an unequal division of Ms. Lucas's retirement fund. We find no error, and we affirm the circuit court's order.

The parties were married for ten years and have one daughter, who was eight years old when the divorce decree was entered. Both parties also have children from prior marriages, none of whom were minors at the time of the decree. The testimony at trial demonstrated that, while Mr. Grantham was working as a master plumber at the time the parties married, his plumber's license was suspended numerous times during the marriage for failure to pay child support for his other children, he quit regularly working right after the parties got married, and he made very little financial contribution to the household during the marriage.

Ms. Lucas testified that, when they married, Mr. Grantham kept his home and continued to keep most of his personal property at that home during the parties' marriage. Ms. Lucas sold her home and used the proceeds to purchase another home for them to live in during their marriage. Ms. Lucas also refinanced the home to obtain money to remodel the home. There was no evidence presented to dispute Ms. Lucas's testimony that she alone paid the mortgage throughout the marriage. While the parties disputed who contributed more labor, there was testimony that they jointly remodeled the home, with help from friends, and continued to live there until they separated in May 2010. Ms. Lucas was employed as an LPN throughout the marriage, many times working two jobs to keep up with the household expenses. She also went to school and obtained her RN degree. She testified that there were times when Mr. Grantham did not work at all and would

"be at home on the deck with his cutoffs and a book, reading" while she was working. His lack of employment and financial contribution was a major source of argument in the marriage. Ms. Lucas testified that she paid the utility bills, the mortgage, and for all of the food. After numerous arguments, according to Ms. Lucas's testimony, Mr. Grantham said he would contribute one-sixth of the expenses because there were six people living in the house: Ms. Lucas, the parties' daughter, three children from Ms. Lucas's previous marriage, and Mr. Grantham. Apparently, Mr. Grantham paid that amount for a while. When Ms. Lucas complained that he needed to go to work and contribute more to household expenses, Mr. Grantham returned to his separate residence and lived there for six months.

There was disputed testimony regarding underage drinking by Ms. Lucas's children from her previous marriage. There was also testimony that both parties occasionally drank. Testimony indicated that Ms. Lucas's previous husband was in prison in Missouri for molesting one of her children, but that he had never met the parties' daughter, and Ms. Lucas testified that she had no intent for them to meet. Testimony established that Mr. Grantham's driver's license was suspended at the time the decree was entered and throughout much of the parties' marriage due to his failure to pay child support. Testimony also indicated that he drove the parties' daughter when his license was suspended and that he paid friends to drive, and these friends sometimes smoked while she was in the car. Finally, there was testimony that Mr. Grantham wrote Bible verses about revenge in permanent marker on all of the kitchen backsplashes in the marital home and allowed the parties' daughter to write on her own bedroom walls after she questioned Mr. Grantham about the practice.

Both parties testified that they were the primary caregivers for their daughter. Family and friends of both parties testified regarding the parental abilities of each. Both parties sought primary physical custody.

After the hearing, the court awarded joint custody with primary physical custody to Ms. Lucas; ordered Mr. Grantham to pay child support and granted him standard visitation; ordered the parties' daughter to have no contact with Ms. Lucas's former husband; found that the parties' home was marital property and ordered it sold with the equity to be split equally (unless the parties decided that one would buy the other's interest); denied Mr. Grantham's request for an unequal division of the equity in the home to compensate him for his part of a home-equity loan of $12,000; and ordered an unequal division of Ms. Lucas's retirement benefits—specifically, that Ms. Lucas retain the benefits as her sole and separate property. Mr. Grantham brought this appeal.

## I.  *Child Custody*

For his first point on appeal, Mr. Grantham contends that the trial court erred in finding that it was in the best interest of the parties' daughter to award joint custody with primary physical custody to Ms. Lucas. He argues that Ms. Lucas's other children all lie to her and use alcohol, demonstrating her poor parenting skills. He also argues that Ms. Lucas's job is more important to her than her children. Mr. Grantham also expressed his concern that Ms. Lucas would not keep their daughter away from her ex-husband in spite of the court's order to do so. Finally, he points to the testimony of several neighbors and friends that he was

their daughter's primary caregiver and a good parent.

We review child-custody cases de novo, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 77, 110 S.W.3d 731, 735 (2003). Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 44, 256 S.W.3d 528, 529 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *Judkins v. Duvall*, 97 Ark.App. 260, 267, 248 S.W.3d 492, 497 (2007).

The court found that both parties loved their child but that it was in the child's best interest to award joint custody with Ms. Lucas having primary physical custody. The court's findings turn largely on the credibility of the witnesses, and we give special deference to the superior position of the trial judge in matters of credibility. *Sharp*, 99 Ark.App. at 44, 256 S.W.3d at 529. The testimony was conflicting regarding Ms. Lucas's other children with much of the testimony suggesting that she had done a good job raising them. She testified that one son, an Eagle Scout and a college graduate, was the director of marketing for a national insurance company in Denver; one daughter was married and had a degree in literature from the University of Arkansas; one son was in the United States Air Force; and her nineteen-year-old daughter had quit college and was working as an assistant manager at a "sub shop." Ms. Lucas testified that she was their daughter's primary custodian, attended church with the child,

took the child to all medical appointments, and helped her with homework. No one testified that Ms. Lucas was not a competent caregiver. Moreover, the evidence provided that Mr. Grantham had failed to pay child support for his other children, resulting in numerous long-term suspensions of his driver's license. This required him to rely upon friends to help transport his daughter. The circuit court made a credibility determination. We hold that the court did not clearly err.

## II. *Division of Marital Property*

Mr. Grantham also contends that the court erred in not dividing equally the proceeds from a $12,000 home-equity loan that was received almost a year before the parties separated. He contends that the court should have divided the equity in the house unequally to make up for this inequity. Under Arkansas Code Annotated § 9–12–315 (Repl.2009), all marital property shall be divided equally between the parties unless the circuit court finds such a distribution would be inequitable. We review division-of-marital-property cases de novo; however, we will affirm the circuit court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence. *Hernandez v. Hernandez*, 371 Ark. 323, 327, 265 S.W.3d 746, 749 (2007).

Ms. Lucas testified that the money had already been spent and that she used it for extra nursing school expenses, her own medical expenses for surgery, and various living expenses. Mr. Grantham agreed to this loan by signing the loan documents. The court found that payment of the living expenses was necessitated by Mr. Grantham's lack of work effort and lack of contribution to the family household expenses. We hold that the court did not clearly err by failing to make an unequal division of

the equity in the house because of this loan.

Mr. Grantham also claims that the circuit court erred in failing to divide Ms. Lucas's retirement fund equally. Section 9–12–315 requires the circuit court to consider the following factors when making an unequal division of marital property: (1) length of the marriage; (2) age, health, and station in life of the parties; (3) occupation of the parties; (4) amount and sources of income; (5) vocational skills; (6) employability; (7) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (8) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (9) the federal income tax consequences of the court's division of property. Ark.Code Ann. § 9–12–315(a)(1)(A) (Repl.2009). While the court must consider the statutory factors and state its reasons for dividing the property unequally, it is not required to list each factor in its order or to weigh all factors equally. *Keathley v. Keathley*, 76 Ark.App. 150, 158, 61 S.W.3d 219, 225 (2001). Further, the specific enumeration of the factors within the statute does not preclude a circuit court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *Id.* at 158–59, 61 S.W.3d at 225.

In this case, the court found that allowing Ms. Lucas to keep all of her retirement benefits was an equitable distribution because during their ten-year marriage, Mr. Grantham had purposely worked below his full earning capacity; remained purposely, chronically underemployed; continually had his professional license and driver's license suspended for failure to pay back child support; constantly nitpicked Ms. Lucas over extremely small amounts of money; and willfully failed to work throughout the marriage, while Ms. Lucas often worked multiple jobs to make ends meet. The court also considered the fact that it awarded one-half of the equity in the marital residence to Mr. Grantham in spite of his long-term, willful failure to act responsibly to regain his licenses and to regularly engage in his potentially lucrative trade. Mr. Grantham argues that he did contribute to the marriage and took on the primary task of remodeling the home. He argues that he also served as primary caregiver for the children and suggests that the result might have been different had he been a woman. The testimony in the case was disputed regarding whether Mr. Grantham served as the children's primary caregiver. While Mr. Grantham was often home, the testimony suggested that the children were in school and after-school activities and care. Moreover, there was no testimony that the parties had agreed that Mr. Grantham would be a stay-at-home dad or that he had served in this role, and there was plenty of testimony that his failure to work was a constant source of discontent. We hold that the court's decision was not clearly erroneous.

Affirmed.

ROBBINS and ABRAMSON, JJ., agree.