2013 Ark. App. 693

**Phillip FREEMAN, Appellant**

v.

**Mary FREEMAN, Appellee.**

**No. CV–12–1039.**

Court of Appeals of Arkansas.

Nov. 20, 2013.

---

7. Davidson did not sign Interrogatory No. 2.

The Graham Law Firm, by: James Lucas Graham, for appellant.

McMillan, McCorkle, Curry & Bennington, Arkadelphia, by: Madeline L. Bennington, for appellee.

DAVID M. GLOVER, Judge.

Phillip Freeman appeals from a divorce decree entered by the Clark County Circuit Court. We affirm.

## I. *Jurisdiction*

Phillip argues that the circuit court lacked jurisdiction to enter the divorce decree because appellee, Mary Freeman, did not prove residency in Arkansas for the sixty days preceding the filing of her divorce complaint. He contends that her presence in Arkansas dated only from September 10, 2010, fifty-one days before the complaint was filed on November 1, 2010.

■ The plaintiff in a divorce case must prove Arkansas residence by either the plaintiff or the defendant for sixty days next before the commencement of the action, and for three full months before the final judgment granting the decree of divorce. Ark.Code Ann. § 9–12–307(a)(1)(A) (Repl.2009). Without proof of Arkansas residency, a circuit court has no jurisdiction to enter a divorce decree. *See Roberts v. Roberts*, 2009 Ark. 567, 349 S.W.3d 886. Residence, as used in section 9–12–307(a)(1)(A), means

> actual presence, and upon proof of that the party alleging and offering the proof shall be considered domiciled in the state, and this is declared to be the legislative intent and public policy of the State of Arkansas.

Ark.Code Ann. § 9–12–307(b) (Repl.2009). Phillip maintains that Mary did not prove an "actual presence" in Arkansas for the "sixty days next before the commencement of the action."

■ Despite the fact that our supreme court once indicated that subsection (b) designates actual presence as the sole basis for jurisdiction, *Wheat v. Wheat*, 229 Ark. 842, 318 S.W.2d 793 (1958), the court subsequently clarified that domicile "is still

and always has been sufficient" to confer jurisdiction. *Weaver v. Weaver*, 231 Ark. 341, 344, 329 S.W.2d 422, 424 (1959). The proper inquiry, therefore, is whether Mary was domiciled in Arkansas during the relevant period. We conclude that she was.

■ Domicile focuses on a party's subjective intent to remain more or less permanently in a particular state. *See Wheat v. Wheat*, 229 Ark. 842, 318 S.W.2d 793 (1958). It is a person's true, fixed, and permanent home, the place to which, when absent, he intends to return and from which he has no present purpose to depart. David Newbern, John J. Watkins, & D.P. Marshall, Jr., *Ark. Civ. Prac. & Proc.* § 6:3, at 128 (5th ed.2010). Once established, domicile continues until it is superseded by a new domicile. *Oakes v. Oakes*, 219 Ark. 363, 242 S.W.2d 128 (1951). To effect a change of domicile, there must be actual abandonment of the first domicile, coupled with the intention not to return to it, and there must be a new domicile acquired in another jurisdiction with the intention of making it a permanent home. *Id.*, 242 S.W.2d 128. A party's intention to abandon his domicile and take up another must be ascertained from all the facts and circumstances in a particular case. *Id.*, 242 S.W.2d 128.

The evidence in this case reveals that Mary and Phillip were married in Arkansas in 1986 and owned a home on Shiloh Road in Arkadelphia, where they lived from 1995 through mid–2007. They also owned acreage in Caddo Valley and a separate house on Shiloh Road, where Phillip's mother lived. In July 2007, they began working and living in Tennessee. They maintained ownership of their Arkansas realty and did not rent their home to third parties or disconnect the utilities. Mary continued to receive mail in Arkansas, and she maintained her driver's license and voter registration here. She

described the move to Tennessee as temporary and said she had no intention of remaining there.

In 2009, Mary continued to work in Tennessee while Phillip took a job in Arkansas. She lived at an extended-stay hotel during the work week and returned to the Shiloh Road home in Arkadelphia each weekend, or every other weekend. She looked for employment in Arkansas but found none.

Phillip eventually returned to Tennessee for work, and he and Mary bought a house there in June 2010. Mary testified that she had been looking for an apartment as an alternative to the extended-stay hotel, and the house was an attractive deal financially. She stated that she and Phillip considered the house an investment, which they could rent or sell when they returned to Arkansas.

On or about September 10, 2010, Phillip and Mary traveled from Tennessee to Arkansas to attend a football game. They stayed with Phillip's mother in Arkadelphia. During an argument, Phillip attacked Mary and injured her shoulder. Thereafter, Mary remained in Arkansas, and Phillip returned to Tennessee. Mary made one trip to Tennessee to pick up a car, only to find that Phillip had purportedly sold or transferred their vehicles.

On these facts, we cannot say that Mary abandoned her long-standing Arkansas domicile to establish a new domicile in Tennessee. She kept her Arkansas home, returned to it frequently, and testified unequivocally that she did not intend to stay in Tennessee permanently. She therefore remained an Arkansas resident through the relevant time period for purposes of circuit-court jurisdiction.

Phillip also argues that the proof corroborating Mary's Arkansas residency was insufficient. Corroborating evidence was offered by Kayla Freeman, who testified that she was the couple's adult daughter and lived in Arkadelphia. Kayla stated that she was aware of the date on which her mother filed for divorce and that, to her personal knowledge, her mother had been a resident of Clark County, Arkansas, for the required period.

Corroboration of residency is a jurisdictional requirement. Ark.Code Ann. § 9–12–306(c)(1) (Repl.2009); *Evtimov v. Milanova,* 2009 Ark. App. 208, 300 S.W.3d 110. The purpose of corroboration is to prevent collusion in procuring a divorce. *Hodges v. Hodges,* 27 Ark.App. 250, 770 S.W.2d 164 (1989). Corroborating evidence should not be speculative and vague in scope. *Araneda v. Araneda,* 48 Ark.App. 236, 894 S.W.2d 146 (1995). But, when it is plain that there is no collusion, the corroboration need only be slight. *Hodges,* 27 Ark.App. 250, 770 S.W.2d 164.

The corroboration here is slight, but sufficient. The parties' daughter lives in Arkadelphia and testified to personal knowledge of her mother's Arkansas residence. Because only slight corroboration was needed—it being plain there was no collusion—the proof was adequate.

## II. *Division Of Tenancy By The Entirety*

The court dissolved the parties' tenancy by the entirety in their home on Shiloh Road and awarded the property to Mary. Phillip correctly notes that, at the time he and Mary acquired the home in 1995, Arkansas Code Annotated section 9–12–317 (Repl.2009) gave a trial court only three options for distributing property owned as a tenancy by the entirety: 1) dissolve the tenancy by the entirety and leave the parties as tenants in common, 2) order the property sold and the proceeds divided, or 3) place one of the parties in possession

pending a future sale. *See Cole v. Cole,* 82 Ark.App. 47, 110 S.W.3d 310 (2003). Awarding the property outright to one spouse, as was done in this case, was not authorized. *Id.,* 110 S.W.3d 310.

In 1997, however, subsection (c) was added to section 9–12–317. This subsection allowed a trial court to dissolve a tenancy by the entirety and distribute the property in the same manner as other property, including making an unequal distribution to one spouse, if warranted. The circuit court in this case utilized subsection (c) to award the parties' Shiloh Road home to Mary. Phillip argues that this was an improper, retroactive application of subsection (c) because his and Mary's ownership of the home preceded the subsection's effective date. We disagree.

Generally, the application of subsection (c) to property acquired before the subsection's effective date would impair a party's "vested interest" in the property. *Cole,* 82 Ark.App. at 57, 110 S.W.3d at 316. But Mary testified that, during the parties' ownership of the Shiloh Road home, title to that property was transferred to the State for unpaid taxes on two occasions, and the property was redeemed and the title transferred back to them most recently in 2005. When property is transferred to the State due to unpaid taxes, title vests in the State. Ark. Code Ann. § 26–37–101(b) & (c) (Repl. 2012). At that point, the owner's vested interest in the property is interrupted and he loses title. *See Givens v. Haybar, Inc.,* 95 Ark.App. 164, 234 S.W.3d 896 (2006). Consequently, the parties lost their vested interest in the property when the State took title and did not re-acquire their interest until they redeemed the property in 2005. Under these circumstances, the circuit court did not err in using section 9–12–317(c) to award the Shiloh Road home to Mary.

Phillip argues that a redemption deed from the State does not convey title but merely extinguishes the State's tax lien. *See, e.g., Mabrey v. Millman,* 208 Ark. 289, 186 S.W.2d 28 (1945). That proposition applies, however, when there is a controversy over whether the person who redeemed the property actually owned it. That is not the situation here.

## III. *Division of Property*

Phillip contends that the court erred in dividing the parties' property unequally in favor of Mary. We review divorce cases de novo and will not reverse a circuit court's division of property unless it is clearly erroneous. *See Jones v. Jones,* 2013 Ark. App. 391, 428 S.W.3d 578.

At the time a divorce decree is entered, all marital property shall be distributed one half to each party unless the circuit court finds such a division to be inequitable. Ark.Code Ann. § 9–12–315(a)(1)(A) (Repl.2009). In that event, the court shall make some other division that it deems equitable, taking numerous factors into consideration, such as the length of the marriage and the parties' occupations and incomes. *Id.* The court's order must recite the reasons for not dividing the property equally. Ark.Code Ann. § 9–12–315(a)(1)(B) (Repl.2009). In the present case, the decree set forth the following reasons for an unequal division of property:

a. The Defendant's [Phillip's] actions regarding the dissipation of marital assets concerning four vehicles of the parties['] which he claims to have sold and the title which he transferred to his mother after the parties' separation.

b. The Defendant's dissipation of marital assets in spending marital monies on online dating memberships and pornography, as well as bond, fines and attor-

ney fees relating to his conviction for public indecency in 2007.

c. The Defendant's physical assault on the Plaintiff and intentional denial of access to a vehicle, which led to the loss of her employment and a period of seven months of unemployment during which time the Plaintiff had no income.

 Phillip argues that his actions did not justify an unequal division. However, Mary testified that she lost her lucrative job in Tennessee after being assaulted by Phillip; that she was injured and afraid to return to Tennessee because Phillip was there; that she had to use proceeds from a 401(k) to make the house payment on Shiloh Road; and that she was without transportation because Phillip allegedly sold or transferred their vehicles following the assault. As a result, she said, she was unemployed for a lengthy period and worked as a hotel housekeeper before eventually finding a higher paying job. She also testified that she incurred medical expenses as the result of her injuries; that she bailed Phillip out of jail or paid fines during the marriage due to his indecent-exposure arrests; and that Phillip expended marital funds on internet dating and pornography sites during the marriage. Dissipation of assets can be considered by a trial judge in making an unequal distribution of marital property. *See, e.g., Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001). Given these circumstances, the circuit court did not err in finding that equity would be served by an unequal division of property.

Phillip argues that the inequality was too great because the court did not divide the couple's three parcels of Arkansas realty equally. In fact, the division of real property was equal. The Caddo Valley parcel was ordered sold and the proceeds divided evenly. The other two parcels—the Shiloh Road home and Phillip's mother's home—were awarded to Mary and Phillip respectively, with each being responsible for the accompanying debt. Accounting for the debt, the equities in the properties were virtually the same.

 Phillip also claims that approximately thirty-four acres attached to the parties' Shiloh Road home were separate and unencumbered, thus giving Mary an advantage in the real-property division. The circuit court correctly found, however, that there was no documentary evidence of the acreage's severance from the house, nor was there any evidence that the acreage was unencumbered.

We therefore affirm the division of marital property.

### IV. *Division of Debt*

 Phillip's final argument is that the circuit court erred in assigning him an unequal portion of marital debt. There is no presumption that an equal division of debts must occur. *Spears v. Spears*, 2013 Ark.App. 535. The key is that the division must be equitable. *Id.* We review the division of debt under the clearly-erroneous standard. *Burns v. Burns*, 2012 Ark. App. 522, 2012 WL 4478401.

 We conclude that the circuit court did not clearly err in its division of debt. The facts listed by the court in support of the unequal division of marital assets apply with the same force to the unequal division of debt.

Affirmed.

HIXSON and WOOD, JJ., agree.