

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-275

DANIELLE KIRA ADAMS
APPELLANT

V.

REBECCA ROSEANNE ADAMS
APPELLEE

Opinion Delivered January 22, 2014

APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT
[NO. DR-12-746-5]

HONORABLE BETH STOREY BRYAN, JUDGE

AFFIRMED

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's denial of her motion to dismiss for lack of jurisdiction and its subsequent entry of a divorce decree addressing custody, visitation, and division of property. On appeal, appellant argues, generally, that (1) the State of Arkansas did not have jurisdiction over the divorce of appellee from appellant at the commencement of divorce proceedings on April, 10, 2012; (2) the State of Arkansas did not have jurisdiction over the minor children at the commencement of divorce proceedings on April 10, 2012; and (3) the circuit court ruled inequitably against appellant following the non-jury trial on October 24, 2012. We affirm.

On October 7, 2011, appellee moved from Arizona to Arkansas with the parties' two minor children, A.A., born December 6, 2005, and C.A., born March 11, 2011. Appellee and the children moved into her mother's home in Harrison, Arkansas. Appellee asserted that she moved to Arkansas for employment. As part of that employment, she was

SLIP OPINION

required to obtain counseling at a place of her employer's choosing. Her employer chose to send her to a counseling center in Minnesota for which she left around November 18, 2011. She took the minor children with her. Appellee returned to Arkansas for two weeks around Christmas 2011, but returned to Minnesota thereafter. She completed the required counseling and returned to Arkansas on March 10, 2012.

On April 10, 2012, appellee filed for divorce from appellant in Arkansas. In the complaint for divorce, appellee asserted, among other things, that although married in Arkansas on June 20, 1998, she and appellant had been living separate and apart since October 7, 2011; that the two minor children had resided in Arkansas for more than the six months immediately prior to commencement of the action; that Arkansas was the home state of the children; that she should have primary custody of the children; and that there was marital property to be divided by the court.

Appellant filed for divorce from appellee in Arizona on April 25, 2012. On May 18, 2012, appellant filed a motion to dismiss appellee's Arkansas complaint for divorce for lack of jurisdiction in Arkansas. In her brief in support of her motion to dismiss, appellant asserted that the parties separated on October 8, 2011, after appellant had been twice diagnosed with gender identity disorder and had acknowledged her gender identity issues.[1] She further asserted that appellee said she was taking the children to "visit" her mother, but stayed in Arkansas until she took them to Minnesota. Appellant was served with appellee's complaint for divorce on June 3, 2012.

---

[1]Appellant was born a man and was named William Benjamin Adams at birth.

SLIP OPINION

A hearing on the motion to dismiss was held on July 11, 2012. The court denied appellant's motion to dismiss on July 23, 2012, without written order. Appellee requested entry of an order denying appellant's motion to dismiss and an order for mediation. On July 31, 2012, appellant filed a motion for Rule 54(b) certification of the requested order denying appellant's motion to dismiss and order for mediation so that an immediate appeal could be undertaken. On August 17, 2012, the court entered an order denying the motion to dismiss and ordering mediation. On the same date, the court entered an order denying appellant's motion for Rule 54(b) certification.

On August 27, 2012, appellant filed an answer to appellee's complaint for divorce. As ordered, the parties completed mediation, without agreement, on October 22, 2012. Following a trial on October 23–24, 2012, the court entered a decree on November 29, 2012, granting appellee an absolute divorce from appellant. In the decree, the court found the following:

1. That the Plaintiff is a resident of Washington County, Arkansas, and has been a resident of Arkansas for more than sixty (60) days prior to the commencement of this action.
2. That venue and jurisdiction are proper in this Court.
   . . . .
5. The minor children of the parties hereto resided within the State of Arkansas for more than the six (6) months immediately prior to the commencement of this action.
6. The State of Arkansas is the "home state" of the minor children and no other proceeding involving the custody of said children is pending before the Court of any other jurisdiction.
7. This Court has and may properly exercise jurisdiction of and over issues regarding the custody of and visitation with the above named minor children by and between these parties.
8. That the Court finds that the allegations contained in the Complaint are sustained by the proof, and that the plaintiff is entitled to an absolute decree of divorce from the defendant.
   . . . .



9. The evidence before the court, and uncontroverted by credible testimony, was that the plaintiff relocated to Fayetteville Arkansas, with the agreement of the defendant.

10. The parties attended a Bible college which was administered by the Assemblies of God, and they both worked as missionaries for the Assemblies of God church during the majority of their marriage.

11. The uncontroverted evidence is that the parties moved to Arizona so that Danielle Adams could pursue two PhD's that would further her career either in world mission work in the church, or in education as a teacher or professor.

12. The uncontroverted evidence is that since the children's births, Ms. Rebecca Adams has been their primary caregiver, by virtue of Ms. Danielle Adams being the primary bread winner. Danielle Adams was the lead missionary as between the parties during their employment, All paychecks were in the name of William Benjamin Adams (Danielle Adams' former name). Danielle was considered to be the person who was employed full-time.

. . . .

14. Further uncontroverted evidence is that in approximately January 2011, Mrs. Danielle Adams determined that she, as she had suspected for some time, had gender identity disorder.

15. According to the credible evidence before the Court, it was jointly decided by the parties that Ms. Danielle Adams would go to Oregon for intensive counseling.

16. After that counseling, it was determined by Danielle Adams that she would continue living as a female full-time. At that time, it became obvious that the marriage could not continue, as Ms. Rebecca Adams did not wish to be married to a woman.

. . . .

21. The parties have agreed, absent an Order of this Court, before the date of this trial, that the parties' children would not yet be privy to information about the divorce, or about the transition of Danielle Adams.

. . . .

26. . . . Until the child is introduced to the transition of Danielle Adams, pursuant to the expert the parties agree upon, video chats shall be conducted by Danielle Adams in an appearance that does not indicate to the minor child that Danielle is a woman.

. . . .

49. . . . [T]he Court finds that there is no personal property to divide as the parties have already decided on an equitable division, except as to the following items:

   a. Rebecca Adams drives a 2002 Honda CRV that does not have any debt against it. It is, based on the evidence before the court, worth anywhere between $3,500 and $4,700, depending on the condition. The court awards the CRV to Rebecca Adams as her sole and separate property. She is responsible for all costs associated with the vehicle, including but not limited to, past, current, and future personal property taxes. The court determines



that an unequal division of property in this circumstance is fair and equitable based on the fact that Miss Rebecca Adams has primary custody of the children, and has since the parties' separation, and has not received any support for the children from Danielle Adams during that time. Further, Rebecca Adams, based on the evidence before the court, does not have the means to acquire another vehicle at the time of this order.

b. Danielle Adams is in possession of a 2011 Nissan Juke. It will be the sole and separate property of Danielle Adams, as well as all debt associated with said vehicle, including but not limited to, past, current, and future personal property taxes.

. . . .

53. The defendant has a retirement account through her employment with World Missions in the Assemblies of God church. The account is a MBA 403(b) Select Retirement Account with a balance of approximately $33,327.29. The entirety of that account was obtained during the marriage of the parties, and the Court finds that it is marital property. It shall be divided 50/50 with a division date of October 23, 2012.

. . . .

54. The plaintiff has an investment account, all of which was accrued subsequent to the separation of the parties. The Court awards those to the plaintiff, based on when the investments were accrued.

55. The plaintiff has a savings account with approximately $3,600 in it. That sum has been set aside for taxes that will be owed exclusively by the plaintiff. Therefore, that account is awarded as the sole and separate property of the plaintiff, for the purpose of allowing the plaintiff to satisfy tax responsibilities.

56. Danielle Adams inherited a sum of money at some point prior to the marriage of the parties. At some point during the marriage, Danielle Adams added the name of Becky Adams to the account, resulting in the need for both parties to sign off on dispersals from said account. The Court finds that act was a gift to the marriage, and all funds remaining in said account are therefore marital in nature. The evidence shows that the money was placed in the joint account of the parties, and that money from that account was used regularly for the benefit of the family and was regularly applied to joint marital expenses. The court finds that whatever balance is in said account as of October 23, 2012 shall [sic] divided evenly between the plaintiff and defendant.

. . . .

60. The Capital One Sony Visa credit card debt in the amount of approximately $20,562 is the sole and separate debt and responsibility of the defendant.

61. The Chase auto loan on the Nissan Juke, in the approximate amount of $21,000 shall be the sole and separate responsibility of the defendant, for reasons set forth above.

62. . . . There is a debt of $475 to the World Financial Network that is associated with the defendant's pursuit of education at the University of Arizona. That debt shall be the sole and separate responsibility of the defendant.



63. The evidence before the court is that there is a NELNET student loan in the name of the defendant in the amount of approximately $33,000. The court determines that $8,000 of that student loan is the joint marital debt of the parties. The evidence before the court was that there is a Citibank student loan in the amount of approximately $38,000. The court determines that $8,000 of that student loan is the joint marital debt of the parties.

64. In an effort to effectuate payment toward the marital portions of these student loans in the most economical and least complicated manner, the court will require Rebecca Adams to pay back half of the $16,000 in student loans which the Court has determined are marital. Because the NELNET loan can no longer be borrowed against, and the Citibank loan appears to still be growing, the Court orders Rebecca Adams to apply her $8,000 of Debt payment towards student loans to the NELNET loan. The remaining student loan debt shall be the sole and separate property and responsibility of the defendant.

65. The court acknowledges that the student loan debts assigned to Danielle Adams are greater than the student loan debts assigned to Rebecca Adams. The Court finds that this unequal division of debt between the parties is fair and equitable due to the increase in earning potential of Danielle Adams as a result of the increase in educational status with the assistance of the student loans. The majority of the student loans were incurred in order to further the degrees of Danielle Adams, while Rebecca Adams cared for the minor children and the home of the parties.

This timely appeal followed.[2]

## I. Standard of Review

On appeal, divorce cases are reviewed de novo.[3] We will not reverse the circuit court's findings unless they are clearly erroneous.[4] When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the

---

[2] Appellant's notice of appeal was due on December 29, 2012; however, that date fell on a Saturday. Pursuant to Rule 9 of the Arkansas Rules of Civil Procedure, the notice of appeal was due on the next business day, which was December 31, 2012. Appellant filed her notice of appeal on December 31, 2012.

[3] *Cummings v. Cummings*, 104 Ark. App. 315, 322, 292 S.W.3d 819, 823 (2009) (citing *Cole v. Cole*, 89 Ark. App. 134, 201 S.W.3d 21 (2005)).

[4] *Brown v. Brown*, 2012 Ark. 89, at 7, 387 S.W.3d 159, 163.

SLIP OPINION

witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest.[5] With respect to the division of property in a divorce case, we review the circuit court" findings of fact and affirm them unless they are clearly erroneous.[6] The decision whether to award alimony is a matter that lies within the circuit court's sound discretion, and we will not reverse the decision to award alimony absent an abuse of that discretion.[7]

## II.    Jurisdiction—Divorce

Appellant's first argument on appeal is that the Arkansas court did not have jurisdiction over the divorce because appellant was not an Arkansas resident as she was not actually present in the state for the time required by statute. The plaintiff in a divorce case must prove Arkansas residence by either the plaintiff or the defendant for sixty days next before the commencement of the action, and for three full months before the final judgment granting the decree of divorce.[8] Without proof of Arkansas residency, a circuit court has no jurisdiction to enter a divorce decree.[9] Residence, as used in section 9-12-307(a)(1)(A), means:

---

[5]*Id.* (citing *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002)).

[6]*Cummings*, 104 Ark. App. at 322, 292 S.W.3d at 824 (citing *Cole v. Cole*, 89 Ark. App. 134, 201 S.W.3d 21 (2005)).

[7]*Id.*

[8]*Freeman v. Freeman*, 2013 Ark. App. 693, at 1, ___ S.W.3d ___ (citing Ark. Code Ann. § 9-12-307(a)(1)(A) (Repl. 2009)).

[9]*Id.* at 1-2, ___ S.W.3d at ___ (citing *Roberts v. Roberts*, 2009 Ark. 567, 349 S.W.3d 886).



actual presence, and upon proof of that the party alleging and offering the proof shall be considered domiciled in the state, and this is declared to be the legislative intent and public policy of the State of Arkansas.[10]

In support of this argument, appellant argues further that residence alone is the requirement for jurisdiction over a divorce and that domiciliary intent alone may not be used in its stead.

This court recently addressed this very argument, stating that "[d]espite the fact that our supreme court once indicated that subsection (b) designates actual presence as the sole basis for jurisdiction, the court subsequently clarified that domicile 'is still and always has been sufficient' to confer jurisdiction."[11] In denying appellant's motion to dismiss for lack of jurisdiction, the court stated from the bench "that domicile requires residence and intent, but there is no length of time required to establish domicile." Referring to appellee's stay in Minnesota for counseling, it went on to state that a "[c]hange of residence for one's health does not effect a change in domicile." It then found that it had jurisdiction over the divorce. Without further explanation, the order entered denying appellant's motion to dismiss found that the court had both personal and subject–matter jurisdiction over the divorce and the parties thereto. It is evident from the court's findings, despite citing residency in its order, that it asserted jurisdiction based on appellee being domiciled in Arkansas; therefore, we now determine whether appellee was domiciled in Arkansas during the requisite statutory time period.

---

[10]*Id.* (citing Ark. Code Ann. § 9–12–307(b) (Repl. 2009)).

[11]*Id.* (citing *Wheat v. Wheat*, 229 Ark. 842, 318 S.W.2d 793 (1958); and *Weaver v. Weaver*, 231 Ark. 341, 344, 329 S.W.2d 422, 424 (1959)).

SLIP OPINION

Domicile focuses on a party's subjective intent to remain more or less permanently in a particular state.[12] It is a person's true, fixed, and permanent home, the place to which, when absent, he intends to return and from which he has no present purpose to depart.[13] Once established, domicile continues until it is superseded by a new domicile.[14] To effect a change of domicile, there must be actual abandonment of the first domicile, coupled with the intention not to return to it, and there must be a new domicile acquired in another jurisdiction with the intention of making it a permanent home.[15] A party's intention to abandon his domicile and take up another must be ascertained from all the facts and circumstances in a particular case.[16]

The record before us shows that both parties, who were married in Arkansas, working and living here before doing missionary work abroad, only moved to Arizona because appellant was accepted to a postgraduate-degree program there. Upon their separation, appellant helped appellee divide their belongings in their family home in Tucson, Arizona, and helped her pack a moving truck, which she no doubt knew was

---

[12]*Id.* at 2, ___ S.W.3d ___ (citing *Wheat v. Wheat*, 229 Ark. 842, 318 S.W.2d 793 (1958)).

[13]*Id.* (citing David Newbern, John J. Watkins, & D.P. Marshall, Jr., Ark. Civ. Prac. & Proc. § 6:3, at 128 (5th ed. 2010)).

[14]*Id.* (citing *Oakes v. Oakes*, 219 Ark. 363, 242 S.W.2d 128 (1951)).

[15]*Id.* at 2–3, ___ S.W.3d at ___ (citing *Oakes*, *supra*).

[16]*Id.*

SLIP OPINION

headed to Arkansas.[17] Following her move to Arkansas, appellee (1) obtained an Arkansas driver's license within days of her move on October 18, 2011; (2) registered the 2002 Honda CRV in Arkansas;[18] (3) legally registered A.A. as a homeschool student in the Valley Springs School District for the 2011–2012 school year; (4) acquired an Arkansas cellular phone number; and (5) changed her ministerial credentials to Arkansas.[19] Furthermore, her Minnesota-based counseling was a prerequisite for a job she was offered by her Arkansas-based employer, which existed only in Fayetteville, Arkansas. And though she did take her children with her to Minnesota during her employment-mandated counseling, she temporarily lived with a pastor friend from the church and took only suitcases and a few toys. It is clear that appellee abandoned her domicile in Arizona, had no intention of returning to Arizona, and intended to make Arkansas her new domicile; therefore, appellee was domiciled in Arkansas.

Because we hold that appellee was domiciled in Arkansas, we do not address appellant's argument that appellee was not a resident according to Arkansas Code Annotated § 9-23-307, nor do we address her argument that Arkansas Code Annotated § 9-23-307 does not permit temporary absences within the required sixty-day statutory period.

---

[17]In an email to appellee sent on January 19, 2012, appellant stated, "I wish I hadn't *agreed* to let you take them so far away." (Emphasis added.)

[18]The registration showed appellant's former name, William Benjamin Adams, as the registrant. Appellee stated that she was able to register the car, though it was not titled in her name, because she was the wife of the title-holder.

[19]Appellant was permitted to practice her ministry anywhere despite being credentialed in New Jersey; therefore, she was not required to transfer her credentials.



### III.    Jurisdiction—Children

Appellant's second argument on appeal is that Arkansas was not the home state of the minor children. The Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions.[20] A stated purpose of the UCCJEA is to avoid relitigation of child-custody determinations in other states.[21] Child-custody jurisdiction is a matter of subject-matter jurisdiction.[22] Subject-matter jurisdiction can be raised at any time by the parties or sua sponte by a court of review and cannot be conferred by the parties' agreement, consent, or waiver.[23] Subject-matter jurisdiction relates to the competence of a court to hear a matter, and custody determinations are status adjudications not dependent upon personal jurisdiction over the parents.[24] The fact that a state has subject-matter jurisdiction to enter a divorce decree does not necessarily confer jurisdiction to make a child-custody determination.[25]

---

[20]*Harris v. Harris*, 2010 Ark. App. 160, at 9, 379 S.W.3d 8, 13 (citing Ark. Code Ann. §§ 9-19-101 to -401 (Repl. 2008) and *West v. West*, 364 Ark. 73, 216 S.W.3d 557 (2005)).

[21]*Piccioni v. Piccioni*, 2011 Ark. App. 177, at 4, 378 S.W.3d 838, 840 (citing *West v. West*, 364 Ark. 73, 216 S.W.3d 557 (2005)).

[22]*Czupil v. Jernigan*, 103 Ark. App. 132, 134, 286 S.W.3d 753, 755 (2008) (citing *Dorothy v. Dorothy*, 88 Ark. App. 358, 360, 199 S.W.3d 107, 109 (2004)).

[23]*Id.* (citing *Zolliecoffer v. Post*, 371 Ark. 263, 265 S.W.3d 114 (2007); *Dorothy*, *supra*; and *Larson v. Dunn*, 474 N.W.2d 34, 39 (N.D.1991)).

[24]*Id.* (citing *Dorothy*, 88 Ark. App. at 361, 199 S.W.3d at 110).

[25]*Id.* (citing *Dorothy*, 88 Ark. App. at 361, 199 S.W.3d at 110).

SLIP OPINION

The UCCJEA sets forth jurisdictional requirements for four types of situations: (1) initial child-custody determinations; (2) continuing jurisdiction; (3) jurisdiction to modify a prior determination; and (4) temporary emergency jurisdiction.[26] With regard to initial child-custody jurisdiction, except as otherwise provided in Arkansas Code Annotated § 9-19-204, a court of this state has jurisdiction to make an initial child-custody determination only if this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.[27] The UCCJEA defines "home state" as the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding.[28] A period of temporary absence of any of the mentioned persons is part of the period.[29]

The parties' children left Arizona with their mother, who came to Arkansas where she established a domicile. The children have not been back to Arizona since they left Arizona in October 2011. Appellee was domiciled in Arkansas at the commencement of her divorce proceedings and her children were domiciled in Arkansas at that time as well.

---

[26]*Piccioni*, 2011 Ark. App. at 4, 378 S.W.3d at 840 (citing Ark. Code Ann. §§ 9–19–201 to -204 (Repl. 2009)).

[27]Ark. Code Ann. § 9-19-201(a)(1). Three other grounds are available under § 9-19-201(a), but none are pertinent to the case before us.

[28]Ark. Code Ann. § 9-19-102(7).

[29]*Id.*

The definition of "home state" specifically includes a temporary absence; therefore the children's stay in Minnesota with their mother, who all parties agree had no intent to remain in Minnesota, was a temporary absence. Based on these facts, Arkansas is the home state of the children, as they have lived with appellee in Arkansas since October 2011, only being absent from the state temporarily during appellee's stay in Minnesota for employer-mandated counseling.

Alternatively, appellant argues that Arizona was the state with the most significant connections to the children. No testimony or evidence was given on significant contacts between the children and the state of Arizona. The only evidence before the circuit court was that the family resided in Arizona because of appellant's doctoral program there and that they had no other significant ties in that state. Appellant is their only tie to the state at this point. Both parties testified to the children being active in each state, with the addition that appellee's family resides in Arkansas. We cannot say that Arkansas does not have significant connections to the children or that Arizona has more significant contacts. The circuit court did not err in finding that it had jurisdiction over the parties' children.

## IV.    Visitation

Appellant's next argument on appeal is that the court erred in its allocation of her visitation. Appellant states that she should have received the majority of the summer as annual visitation and that appellee should be required to split the expenses of transporting the children to Arizona for spring break just as the court required of appellee with all other visitation. Beyond conclusory statements, appellant does not develop an argument

13



and cites no authority. A mere conclusory statement without convincing argument or authority is not effective to raise a point on appeal.[30]

### V. Apportionment of Marital Assets and Debts

Appellant argues that the court awarded marital assets and debts inequitably without giving reasons for the unequal division. While appellant listed various inequalities in the division of property and debts, she did so without any supporting arguments or authority on all but two. She only cited legal authority with her claims that her inheritance money should have been separate property and that the court erred in awarding marital debt without explanation; therefore, we only address these claims.

In support of her argument that her inheritance should have been separate property, appellant asserts that the money remained in its original account and the parties never put money into the account though they both withdrew funds from the account. Property that is acquired by inheritance is not considered marital property.[31] However, when property is placed in the names of a husband and wife, a presumption arises that they own the property as tenants by the entirety.[32] This presumption can be overcome only by clear and convincing evidence that a spouse did not intend a gift.[33] A gift is a

---

[30]*Hall v. Ark. Dep't. of Human Servs.*, 2012 Ark. App. 245, at 11, ___ S.W.3d ___ (citing *Ball v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 307).

[31]*McCracken v. McCracken*, 2009 Ark. App. 758, 358 S.W.3d 474 (citing Ark. Code Ann. § 9-12-315(b)(1) (Repl. 2008)).

[32]*Id.* (citing *Young v. Young*, 101 Ark. App. 454, 278 S.W.3d 603 (2008)).

[33]*Id.*

voluntary transfer of property, without valuable consideration, to another.[34] Appellant's contention requires that we determine whether she produced clear and convincing evidence that she did not intend to bestow a gift of the inheritance money to rebut the presumption of gift that arose when she placed appellee's name on her inheritance account. For reasons discussed below, we find that she failed to overcome the presumption.

> The court stated the following with regard to appellant's inheritance:
>
> Danielle Adams inherited a sum of money at some point prior to the marriage of the parties. At some point during the marriage, Danielle Adams added the name of Becky Adams to the account, resulting in the need for both parties to sign off on dispersals from said account. The Court finds that act was a gift to the marriage, and all funds remaining in said account are therefore marital in nature. The evidence shows that the money was placed in the joint account of the parties, and that money from that account was used regularly for the benefit of the family and was regularly applied to joint marital expenses.

Based on this information, as admitted to by appellant, we find that the trial court did not commit error in allocating the inheritance account as marital property and dividing it equally between the parties.

In support of her argument that the court erred in awarding marital debt without explanation, appellant erroneously cites *Copeland v. Copeland*, in which this court reversed the trial court's unequal division of property for failure to cite reasons.[35] *Copeland*, which dealt with division of property, does not apply here. Appellant's argument deals with marital debts.

---

[34]*Kelly v. Kelly*, 2011 Ark. 259, at 8, 381 S.W.3d 817, 824 (citing *Davis v. Jackson*, 232 Ark. 953, 341 S.W.2d 762 (1961)).

[35]84 Ark. App. 303, 139 S.W.3d 145 (2003).

The allocation of marital debt is an essential item to be resolved in a divorce dispute, and must be considered in the context of the distribution of all of the parties' property.[36] However, Arkansas Code Annotated § 9-12-315 and its presumption of equal division does not apply to the division of marital debts.[37] There is no requirement that the marital debt must be subtracted from the marital assets to determine the "net" value of the total award made to each party in all divorce cases.[38] A determination as to how debts should be allocated between the parties will not be reversed unless it is clearly erroneous.[39]

The court apportioned student loans by allocating each party's own student loans to themselves, with the exception of $16,000 of student loans in appellant's name that were used for marital expenses; that debt was split evenly between the two parties. This was equitable because appellant will be able to benefit from the increased earning potential she will receive as a result of the degrees the student loans allowed her to obtain. Appellee was awarded the 2002 Honda CRV because it was unencumbered and she could not afford to obtain another vehicle at the time of the order. Since appellant was awarded the 2011 Nissan Juke, she received the outstanding loan still owed on it. All the other debts were minor except the Capital One Sony Visa, which was awarded to appellant. While the court did not explain why this debt was not divided between the parties, the facts show

---

[36] *Friend v. Friend*, 2010 Ark. App. 525, 11, 376 S.W.3d 519, 526 (citing *Boxley v. Boxley*, 77 Ark. App. 136, 73 S.W.3d 19 (2002)).

[37] *Id.* (citing *Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108).

[38] *Id.*

[39] *Id.*

SLIP OPINION

that appellant was the breadwinner during the parties' marriage, with appellee staying home to care for the children. It is not clearly erroneous to make appellant solely responsible for the debt. Considering such division of the parties' debts within the context of the circuit court's division of property as a whole, we cannot find that it was clearly erroneous; therefore, the circuit court committed no error in dividing the parties' debts.

## VI. Gender Identity Discrimination

Finally, appellant argues that the court discriminated against her by (1) ignoring the alleged discriminatory bias of the counselor chosen by appellee; (2) preventing appellant from questioning the counselor on his religious beliefs; and (3) ordering appellant to present herself as male with her children for a time. While asserting that there is no Arkansas law dealing with "the civil liberty of gender expression" or prohibiting discrimination against gender identity, she submits no permissive or persuasive authority from any other jurisdictions, directly addressing or distinguishing her claim. It is not the duty of this court to research or develop arguments for an appellant on appeal.[40] Indeed, our courts have often said that failure to develop an argument precludes review of the issue on appeal.[41] We do not address the merits of this argument.

Affirmed.

GLADWIN, C.J., and WOOD, J., agree.

Pro se appellant.

*Yoakley Law Firm*, by: *Deric Yoakley*, for appellee.

---

[40]*Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, ___ S.W.3d ___ (citing *Martin v. Pierce*, 370 Ark. 53, 63–64, 257 S.W.3d 82, 90 (2007)).

[41]*Id.* (citing *Davis v. State*, 375 Ark. 368, 375, 291 S.W.3d 164, 169 (2009)).