Cite as 2020 Ark. App. 167

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-18-1026

| | |
|---|---|
| ADRIENNE ELAINE FRIEDLY<br><br>APPELLANT<br><br>V.<br><br>ERIK CHRISTOPHER FRIEDLY<br><br>APPELLEE | **Opinion Delivered:** March 11, 2020<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43DR-16-586]<br><br>HONORABLE JASON ASHLEY PARKER, JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART |

**BART F. VIRDEN, Judge**

Adrienne and Erik Friedly were married in June 2008 and divorced in August 2018. They have two children, SVF (9/22/11) and KEF (6/16/13). Adrienne appeals from the order of divorce alleging that the circuit court erred by (1) failing to determine which items of personal property were marital or nonmarital; (2) assigning half of Erik's preseparation student-loan debt to her; (3) "dividing the parties' retirement accounts equally, but in an inequitable manner"; (4) ordering Adrienne to pay Erik's attorney's fees regarding her request for an order of protection in a separate proceeding (case number 43DR-18-13); and (5) denying her request for production of Erik's medical records. We affirm in part and reverse in part.

I. *Relevant Facts*

In August 2016, Erik filed for divorce on the general-indignities ground.[1] Adrienne counterclaimed for divorce, and both parties requested full custody. Adrienne filed a motion for psychological evaluation citing "serious concerns" related to Erik's treatment at the Veterans Affairs Hospital (VA). The court granted the request for psychological evaluation and ordered Erik to undergo evaluation with Dr. Glen Adams. Adrienne filed a motion to compel production of Erik's medical records from the VA because she was "aware of Plaintiff's diagnoses and believes they are relevant to the issues of custody and visitation herein." Erik asserted physician-patient privilege. At the pretrial hearing, the court denied the motion to compel, agreeing that the information is privileged. The circuit court noted that Dr. Adams's report would be forthcoming, and the issue could be revisited if Dr. Adams requested Erik's past medical records.

In January 2018, Adrienne filed a petition for an order of protection, which was dismissed for lack of evidence.

In February, the circuit court held a two-day hearing, and Adrienne testified that she worked sporadically during the marriage as a nurse practitioner. She explained that she left several jobs during the marriage. She explained that at times, she had to quit work because the job requirements conflicted with parenting and pregnancy; one workplace was a hostile work environment; once she was fired; and another time she began having health issues. At

---

[1]In March 2017, he filed an amended complaint for divorce based on general indignities and adultery.

times, the children attended day care fulltime or a babysitter was in the home, even when Adrienne wasn't working.

Erik testified that during the marriage, he worked consistently but left his career in the food-safety industry because there was no opportunity for advancement. Erik explained that he and Adrienne agreed that he would obtain student loans and get an APRN certification to increase his income. Erik testified that by May 2019, his training would be complete, and both parties would be at the same level of income potential. Erik testified that during the marriage, he paid Adrienne's tuition and premarital student-loan payments.

At the trial, the parties again raised the issue of whether Erik's VA medical records were privileged. Erik explained that while a patient at the VA, he had been diagnosed with PTSD from his Iraq deployment and was prescribed .5 mg of Ativan for anxiety, but he asserted privilege as to all his VA medical records. Adrienne asserted that parental fitness is always an issue with custody and visitation and that mental health is a key component of fitness; thus, he should be ordered to produce his mental-health records. The court denied Adrienne's request, stating that Erik had undergone a psychological exam and that "all this stuff's going to be dealt with there. You may ask about that."

After the hearings, the circuit court entered a divorce decree finding that Erik was entitled to a divorce from Adrienne on the general-indignities ground. In the order, the circuit court set forth that all real property would be sold or, failing that, auctioned. The parties were ordered to "walk-through" the marital home and to divide the personal property. The court stated that if the parties could not agree, the personal property would

be sold and the proceeds divided. The court ordered the parties' cars and all marital property sold and the proceeds divided after reimbursements were made. Adrienne was ordered to reimburse Erik half the cost of repairs to the home to ready it for sale, and Erik was ordered to reimburse Adrienne half the land payments made since the separation.

The court ordered that Erik's student-loan balance before separation—$26,811.62—would be divided equally, assessing $13,405.81 to each party. The court found that Adrienne and Erik were each entitled to half of the other's retirement account as of the date of separation. Erik's account was valued at $76,364.49, and Adrienne's was valued at $35,744.52. The difference between them, $20,309, was awarded to Adrienne. This amount was offset by Adrienne's share of the student-loan debt, leaving $6,904.18. The court ordered that $6,904.18 would be assessed against Erik's 401k account by means of a QDRO. The court also found that Erik's payment of Adrienne's student loans during the marriage was a gift to the marriage.

The attorney's fees incurred during the divorce case were evenly divided between the parties; however, the court ordered Adrienne to pay the attorney's fees for case number 43DR-18-13, the order-of-protection case, because it found that she had filed the petition in bad faith.

The court awarded Erik full custody of the children with standard visitation to Adrienne, after finding her unfit to have custody. Adrienne was ordered to pay $524 per month in child support. Adrienne timely filed a notice of appeal, and Erik cross-appealed, though he later abandoned the cross-appeal.

II. *Discussion*

A. Personal–Property Designation

For her first point on appeal, Adrienne argues that the circuit court erred by failing to designate some of the property as marital or nonmarital. We disagree and affirm.

This court reviews division of marital property cases de novo. *Grantham v. Lucas*, 2011 Ark. App. 491, 385 S.W.3d 337. A circuit court's findings of fact with respect to division of property will be affirmed unless clearly erroneous or clearly against the preponderance of the evidence. *Baker v. Baker*, 2013 Ark. App. 543, 429 S.W.3d 389. The circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001).

The overriding purpose of Arkansas Code Annotated section 9-12–315 (Repl. 2015) is to enable the court to make a division of property that is fair and equitable under the specific circumstances. *Keathley, supra.* According to section 9-12-315(a)(3)(A), "[e]very such final order or judgment shall designate the specific real and personal property to which each party is entitled." Here, the court explained that if the parties could not agree whether property was marital or nonmarital, then that property would be sold and the proceeds divided equally. Adrienne and Erik could not agree on the ownership of some of the personal property, and the court set forth in paragraph six of the order that "[f]rom the net proceeds of the sale of the marital assets, the following reimbursements shall be made, and after reimbursements are made, any remaining funds shall be equally divided between parties." Though the circuit court did not initially expressly designate the disputed property

5

as either marital or nonmarital, the property was eventually designated as marital property in the order by its inclusion with marital assets to be sold and the proceeds divided. We see no error, and we affirm.

## B. Student–Loan Debt

For her second point on appeal, Adrienne asserts that the court erred by inequitably dividing Erik's remaining student-loan debt because only a fraction of the student loan was used to benefit the household. Adrienne argues that our court has affirmed several circuit court decisions to classify as marital debt only the portion of student-loan debt that benefited the marriage and that these cases dictate that the panel must reverse the circuit court in the instant case.[2] Adrienne's point is not well taken, and we affirm.

The allocation of marital debt is an essential item to be resolved in a divorce dispute and must be considered in the context of the distribution of all the parties' property. *Adams v. Adams*, 2014 Ark. App. 67, at 16, 432 S.W.3d 49, 60. Under Arkansas Code Annotated section 9-12-315 the presumption of equal division does not apply to the division of marital debts. *Id.* The circuit court has the authority to consider the allocation of debt in a divorce case. *Baker*, 2013 Ark. App. 543, 429 S.W.3d 389. A circuit court's decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Id.* A finding of fact is clearly erroneous if, after reviewing

---

[2]*See Adams v. Adams*, 2014 Ark. App. 67, 432 S.W.3d 49; *Burns v. Burns*, 2012 Ark. App. 522.

all the evidence, the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.*

Adrienne asserts that *Easley v. Easley*, 2010 Ark. App. 73, supports her assertion that only the portion of student-loan debt used to benefit the marriage may be considered marital debt and divided equally. In *Easley*, about 85 percent of the wife's $88,000 student loan benefited both the husband and wife and was therefore classified as marital debt. Because the husband benefited from the loan, 40 percent of the remaining 85 percent was allocated to him. Our court held that the circuit court did not err in dividing the student-loan debt and that "[t]he trial court then used its broad discretionary powers to distribute the debt—excepting the fifteen percent that benefitted [the wife] solely—in an unequal fashion." *Easley*, 2010 Ark. App. 73, at 2. Our holding in *Easley* is not a mandate to the circuit courts to divide student-loan debt by a particular formula. Instead, our court deferred to the circuit court's discretion to distribute the debt equitably under the circumstances.

Here, Erik's preseparation student-loan-debt balance was $26,811.62. His total student-loan debt incurred during the marriage was $50,738.62. Adrienne was ordered to pay half the preseparation balance, or $13,405.81. The court denied Erik's request to offset the amount he repaid for Adrienne's premarital student-loan debt. The court found that Erik's repayment of Adrienne's premarital student loans was a gift to the marriage. In conjunction with the student-loan debt, the court decided that Erik's retirement account and Adrienne's retirement account, totaling $112,109.01 should be divided equally. To equalize the accounts, the court assessed that Erik owed Adrienne $20,309.99, and that

7

[t]he difference between the retirement accounts shall be offset by the amount that [Adrienne] owes [Erik] for the student loan debt; thereby leaving a balance owed to [Adrienne] in the amount of $6,904.18, for which a Qualified Domestic Relations Order shall issue against [Erik's] Fidelity Land O' Frost 401k Retirement Savings Plan for this exact sum.

Adrienne argues that because only $8531 of the student loan was used for marital benefit, the circuit court inequitably divided the debt, and the order must be reversed. As stated above, under Arkansas Code Annotated section 9-12-315, the presumption of equal division does not apply to the division of marital debts. *Id.* The key is that the division must be equitable. *Freeman v. Freeman*, 2013 Ark. App. 693, at 9, 430 S.W.3d 824, 830. Here, the court considered past student-loan repayment, the allocation of retirement accounts, and current student-loan debt in determining how to apportion Erik's student-loan debt. In light of the circuit court's broad discretionary power to allocate debt, we conclude that the circuit court did not clearly err in the division of Erik's student-loan debt.

## C. Retirement Accounts

Adrienne asserts that the circuit court erred in its division of each parties' retirement account and that she might suffer unfair tax consequences as a result of the circuit court's distribution of the accounts. Adrienne's argument fails because she does not identify the tax consequences she will suffer—she asserted only that unfair tax consequences *might* occur. We do not consider allegations of error absent citation to authority or convincing argument, and on this point we affirm. *Lowell v. Lowell*, 55 Ark. App. 211, 219, 934 S.W.2d 540, 545 (1996).

D. Attorney's Fees in Order-of-Protection Case

For her fourth point on appeal, Adrienne argues that the circuit court erroneously awarded attorney's fees to Erik relating to a petition for an order of protection—a different proceeding than the divorce case. We agree, and we reverse the circuit court's award of attorney's fees.

In *Scudder v. Ramsey*, 2013 Ark. 115, at 14, 426 S.W.3d 427, 436, our supreme court held that a portion of the attorney's fees awarded by the circuit court could not stand because the court's authority to award attorney's fees "does not extend to fees incurred in separate litigation." Though *Scudder* is not factually identical to the instant case, the holding is instructive here. Though the divorce proceedings and the petition for the order of protection were closely related, they were separate proceedings with different case numbers, and the court erred in awarding attorney's fees in the divorce case that were incurred in the separate petition for an order of protection.

E. Erik's Medical Records

Adrienne argues that because custody and visitation are involved, Erik's medical records are subject to disclosure; thus, she asserts that the circuit court erred in refusing to disclose the records. We see no error and affirm.

The appellate courts have long held that the circuit court has wide discretion in matters pertaining to discovery and that a circuit court's decision will not be reversed absent an abuse of discretion. *Hardy v. Hardy*, 2011 Ark. 82, 380 S.W.3d 354. A motion for production of documents must be considered in the light of the particular circumstances

that give rise to it and the need of the movant for the information requested. *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, 536 S.W.3d 635. When the appellant is required to prove his or her claim by documents, papers, and letters kept by the appellee, the scope of discovery should be broader. *Id.* We consider this factor in deciding whether there has been an abuse of discretion in denying a discovery request. *Id.* The goal of discovery is to permit a litigant to obtain whatever information he or she may need to prepare adequately for issues that may develop without imposing an onerous burden on the adversary. *Id.*

Arkansas Rule of Evidence 503(b) sets forth the general rule of physician–patient privilege, as follows:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition including alcohol or drug addiction among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patients family.

During the pendency of the case, Adrienne requested Erik's medical records from the VA because when they were together, she was "aware of Plaintiff's diagnoses and believes they are relevant to the issues of custody and visitation herein." Adrienne also claimed that while they were married, Erik told her that he once attempted suicide—a claim that Erik denied. In response, Erik asserted that the medical records are privileged and that Adrienne's request was "irrelevant, not likely to lead to discoverable evidence and overly broad." At the hearing, Adrienne argued that a parent's mental stability is inherently relevant when custody and visitation are at issue; thus, the circuit court erred by not ordering Erik

10

to produce his medical records. The circuit court denied Adrienne's motion to compel and found that Erik's medical records were privileged. We do not agree that the circuit court abused its discretion.

On appeal, Adrienne concedes that Arkansas law does not require that a parent's medical records are automatically subject to disclosure when custody and visitation are at issue. Adrienne cites caselaw from Alabama, Alaska, Indiana, Kentucky, Louisiana, Michigan, Missouri, Maryland, Nebraska, New York, and Texas. These states—under certain circumstances—have allowed exceptions to normally privileged records relating to mental health. We decline to do as Adrienne urges and adopt a blanket exception to patient–physician privilege when custody and visitation are at issue. Instead, we reiterate that the circuit court has wide discretion in matters pertaining to discovery and that a circuit court's decision will not be reversed absent an abuse of discretion. *See Hardy*, *supra*.

Adrienne asserts that the exclusion of the VA medical records "precluded [the circuit court] from properly weighing all the necessary information regarding which party was the more appropriate parent to whom custody should be awarded." We disagree. At the pretrial motion hearing in January 2017, the circuit court denied the motion to compel the production of Erik's VA medical records and noted that if after Dr. Adams performed the evaluation, he is "made aware of something that he needs to do a full psychological examination and something touches on his report that he feels like its not complete and he needs to redo it or look into other evidence, then we will fight that battle when we come to it." Erik underwent the psychological evaluation, and Dr. Adams's report was admitted

11

and considered by the court. The circuit court did not abuse its discretion by relying on Dr. Adams's report and expertise and the other testimony and evidence presented at trial in making its decision regarding custody and visitation.

Affirmed in part; reversed in part.

GRUBER, C.J., and KLAPPENBACH, J., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit* and *Elizabeth M. James*, for appellant.

*Davidson Law Firm*, by: *David L. Gershner*, for appellee.