Cite as 2020 Ark. App. 284

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-20-16

| | |
|---|---|
| DEBRA GILL | **Opinion Delivered:** May 6, 2020 |
| APPELLANT | |
| | APPEAL FROM THE CARROLL |
| V. | COUNTY CIRCUIT COURT, |
| | EASTERN DISTRICT |
| | [NO. 08EJV-19-78] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES AND MINOR | |
| CHILDREN | |
| APPELLEES | HONORABLE SCOTT JACKSON, |
| | JUDGE |
| | |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Debra Gill appeals from an order of the Carroll County Circuit Court adjudicating her two children, CC (9/15/15) and HE (6/18/19), dependent-neglected. She challenges the circuit court's determination that Arkansas has jurisdiction of the dependency-neglect case. We affirm.

I. *Relevant Facts*

On September 16, 2019, the Arkansas Department of Human Services (Department) filed a petition for dependency-neglect regarding CC and HE. In the affidavit attached to the petition, the Department alleged that on September 12, Carroll County dispatch called to report that Lonnie Evans had beaten CC with a board. Earlier that day, officers from the Carroll County Sherriff's Office went to Evans's automotive shop to investigate a report about CC's walking across the highway. The shop is located in Blue Eye, Arkansas, on the

Missouri border. CC told investigators that Evans whipped him with switches and shot him with a BB gun and that he was afraid of Evans. Gill admitted that Evans had shot CC with a BB gun, and she stated that she was not concerned about it nor had she asked Evans to stop. Regarding CC's walking across the highway earlier, Gill stated that CC, who was three years old, should have known better and could look after himself. When the investigator asked CC to show her where he slept, CC took her to a small school bus in the shop yard. Inside, there was a mattress and CC explained that the family slept together on the mattress. CC showed the investigator the kiddie pool in the shop yard where he took a bath. A hose hanging down from a vehicle was the shower, CC explained.

In the ex parte order for emergency custody, the circuit court found probable cause that the children were dependent-neglected, and removal from the home was necessary to protect their health, safety, and welfare. Shawn Cain, who lives in Green Forest, Arkansas, was identified as CC's putative father.

At the October 17 hearing, Rebecca Mayfield, an investigator with the Division of Children and Family Services, testified that she placed the seventy-two-hour hold on CC and HE. Mayfield explained that she went to an automotive shop on the Arkansas side of Blue Eye to investigate a report that Evans had severely beaten CC. When she arrived at the shop, Mayfield saw that CC's buttocks were "covered in bruises," and he had a BB lodged in the skin on his buttocks. Gill told Mayfield that CC is "a bad kid" and that she believes this was all being blown out of proportion. Gill stated that she believed it is the three-year-old's responsibility to fetch things for her from the bus where they sleep and to remember to not wander onto the highway. Mayfield testified that the bus had the benches

2

removed and housed a twin mattress, a couch, a shelf, and a purse. In the automotive shop, there was a shelf with food and formula, a baby monitor, and blankets. Gill produced a week's worth of clothes for the children and a car seat from nearby, though Mayfield did not see exactly where the items had come from. At the time, Gill did not tell Mayfield that she also has a residence in Missouri. Mayfield testified that CC showed her the kiddie pool where he bathed and the hose attached to a car that was used as a shower. An infant bathtub for HE was inside the kiddie pool.

Gill requested that the case be transferred to Missouri so that she could more easily receive reunification services. Gill testified that at the time of removal and at the time of the hearing, she primarily lived in Missouri in Evans's trailer and that the family had slept in the bus once or twice a week when it was too late to drive back to the trailer. Gill denied that they used the kiddie pool for bathing. Gill also testified that CC's father, Shawn Cain, had spent a lot of time with CC immediately after HE was born.

The attorney ad litem argued that the case should be heard in Arkansas because Gill did not have a residence of her own, and the case should not be transferred to Missouri on the basis of her residency with Evans.

The court orally ruled that Arkansas was the proper forum. The court stated that it did not find credible Gill's testimony that she and the family had lived in Missouri most of the time prior to the filing of the petition. The court stated that the evidence—a week's worth of clothes and bathing facilities—supported its finding of a primary residence in Arkansas. The court stated, "I don't know how the Court could find that the primary

3

domicile was the trailer in Missouri" because there was no corroboration for Gill's claim that they lived there.

On October 28, 2019, the circuit court entered an order adjudicating Gill's children dependent-neglected. The order also stated::

> 25. The Court hereby denies Ms. Gill's request to dismiss this case for lack of jurisdiction, as there is no dispute from Ms. Gill that the incidents that brought the children into care occurred in Arkansas.

> 26. The Court, also, hereby denies Ms. Gill's request to transfer this case to Missouri, as no evidence has been presented their either of the juveniles were subject to a custody order out of Missouri at the outset of this case, if Missouri is, in fact the home state of the juveniles. The Court is disinclined to believe that Missouri is the home state of the juveniles, as the only evidence that Missouri was the primary residence of the family at the time of removal is the testimony of the mother, who testified that the family was staying at the Arkansas address one (1) or two (2) nights per week. However, the testimony of Rebecca Mayfield a/k/a Novak was that it appeared that the family was staying at the Arkansas address more than one (1) or two (2) nights per week, that the family had bathing facilities at the Arkansas address, that the family had bedroom facilities at the Arkansas address, and that the family had more than one (1) weeks' worth of clothing at the Arkansas address.

Gill timely filed a notice of appeal.

II. *Discussion*

On appeal, Gill asserts that the circuit court's order is void because the court lacked jurisdiction. Specifically, Gill contends that the evidence demonstrates that Missouri is the children's home state, as defined by the UCCJEA. Gill also argues that the circuit court erroneously relied on the venue statute, Arkansas Code Annotated section 9-27-307 (Repl. 2015), rather than the UCCJEA, Arkansas Code Annotated sections 9-19-101 to -401 (Repl. 2015). Gill's first argument asks this court to reweigh evidence, and her second assertion is incorrect.

4

Our standard of review is de novo, although we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Ark. Dep't of Human Servs. v. Waugh*, 2015 Ark. App. 155, 457 S.W.3d 286. Furthermore, when a circuit court has discretion to decide whether to decline to exercise jurisdiction under the UCCJEA, we will not reverse the circuit court's decision absent an abuse of discretion. *Hatfield v. Miller*, 2009 Ark. App. 832, 373 S.W.3d 366. The UCCJEA provides the exclusive method for determining the proper forum in child-custody proceedings involving other jurisdictions. *Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003). Although the present case involves a petition for dependency-neglect, a "child-custody proceeding" under the UCCJEA includes proceedings for neglect, abuse, and dependency. Ark. Code Ann. § 9-19-102(4). Arkansas Code Annotated section 9-19-201 sets forth the criteria used to determine whether this state has jurisdiction to make an initial child-custody determination and states as follows:

> (a) Except as otherwise provided in § 9-19-204, a court of this state has jurisdiction to make an initial child-custody determination only if:

> (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

> (2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

> (A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

5

(3) all courts having jurisdiction under subdivision (a)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 9-19-207 or § 9-19-208; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Arkansas Code Annotated section 9-19-102(7) defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding . . .[.]" "Commencement" is defined as the filing of the first pleading in a proceeding. Ark. Code Ann. § 9-19-102(5).

First, we address Gill's assertion that the circuit court decided this case under the wrong statute. She is incorrect, and we note that her argument regarding this issue is scant. Gill simply states that the court relied on the incorrect statute and refers to the page of the abstract where following colloquy took place:

THE COURT:              What is the venue statute in the juvenile code?

ATTORNEY AD LITEM:     9-27-307, I think.

THE COURT:              Yes. Venue is where the juvenile resides. If that is incorrect, the proceeding is not dismissed. It is transferred to the proper county but, at this point, do either of you want to present testimony about the residence of the juvenile or–

ATTORNEY AD LITEM:     Your Honor, I think under UCCJEA, this court has original jurisdiction–

6

Thereafter, the circuit court heard evidence and testimony regarding the children's home state, and the circuit court later determined that the children had been living in Arkansas and no other court had exercised jurisdiction over the case. To the extent that Gill propounds her argument, it is not well taken, and we hold that the circuit court did not err.

The crux of Gill's appeal is that the court improperly weighed the evidence in determining that Arkansas is the children's home state. Citing *Gullahorn v. Gullahorn*, 99 Ark. App. 397, 260 S.W.3d 744 (2007), Gill argues that the court should have done a more in-depth analysis regarding the connections the parents and children have in each state, where the children receive care, protection, and training, and have relationships. *Gullahorn* is not analogous to the instant case. The circuit court in *Gullahorn* relied on an incorrect assumption of law in reaching its decision, and our court reversed and remanded the case, stating that "the trial judge expressed his belief that he would be reversed if he transferred the case to Texas because the law of this state required him to retain jurisdiction as long as one parent to the divorce action and to the original custody order remains in this state." *Gullahorn*, 99 Ark. App. at 400, 260 S.W.3d at 746. Here, the circuit court did not fail to exercise discretion or decide the matter based on a misapprehension of the law. At the hearing, there was testimony that the family slept, kept clothing, food and home supplies, and had bathing facilities in Arkansas. Regarding family connections and support, there was testimony that CC's father and Gill's adult daughter lived in Arkansas. The only testimony favoring residency in Missouri was Gill's testimony that sometimes the family lived in Evans's trailer in Missouri—testimony that the caseworker disbelieved and that the circuit court stated in its written order it did not find credible. In light of this testimony and

7

evidence, the circuit court exercised its discretion and found that the children lived in Arkansas at the time of removal and that no other court had exercised jurisdiction over the matter. It did not state, as the circuit court did in *Gullahorn*, that mere residency of one parent was determinative.

The circuit court did not misapprehend the law or clearly err in determining that the evidence supported Arkansas's jurisdiction of the instant case, and we affirm.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.